## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **The Mosaic Company,** ) | |
| ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Court No. 21-00117** |
| ) | |
| **UNITED STATES,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

## <u>COMPLAINT</u>

Plaintiff The Mosaic Company ("Mosaic"), by and through its attorneys, alleges and states as follows:

### <u>ADMINISTRATIVE DETERMINATION TO BE REVIEWED</u>

1.      Plaintiff brings this Complaint to contest certain aspects of the final affirmative determination issued by the U.S. Department of Commerce ("Commerce") in the countervailing duty investigation of phosphate fertilizers from the Russian Federation.  The final determination was published in the Federal Register on February 16, 2021.  Phosphate Fertilizers from the Russian Federation: Final Affirmative Countervailing Duty Determination, 86 Fed. Reg. 9479 (Int'l Trade Admin. Feb. 16, 2021) ("Final Determination"), and accompanying Issues and Decision Mem. ("Final IDM").  The countervailing duty order on phosphate fertilizers from the Russian Federation was signed on April 1, 2021, and published in the Federal Register on April 7, 2021.  Phosphate Fertilizers from the Kingdom of Morocco and the Russian Federation: Countervailing Duty Orders, 86 Fed. Reg. 18,037 (Int'l Trade Admin. Apr. 7, 2021) (the "CVD Order").

Court No. 21-00117

## JURISDICTION

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), as this action was commenced under sections 516A(a)(2)(A)(i)(II) and 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended.  19 U.S.C. § 1516a(a)(2)(A)(i)(II), (B)(i).

## STANDING

3.      Plaintiff is a U.S. producer of the domestic like product and therefore an interested party within the meaning of 19 U.S.C. § 1516a(f)(3) and 19 U.S.C. § 1677(9)(C). Mosaic participated as the Petitioner in Commerce's countervailing duty investigation of phosphate fertilizers from the Russian Federation, including by filing case and rebuttal briefs, and has standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF ACTION

4.      Plaintiff commenced this action by filing a Summons on March 18, 2021, within 30 days after publication of the Final Determination in the Federal Register.  Plaintiff filed an Amended Summons on April 12, 2021, within 30 days after publication of the CVD Order in the Federal Register.  Plaintiff is filing this Complaint within 30 days after filing the Amended Summons, in accordance with the Court's order of April 12, 2021.  See Order, ECF No. 9 (Apr. 12, 2021).  Accordingly, this action is timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A) and Rules 3(a)(2) and 6(a) of this Court.

## HISTORY OF THE ADMINISTRATIVE PROCEEDING

5.      Plaintiff filed a petition with Commerce and the U.S. International Trade Commission on June 26, 2020, alleging that the Government of the Russian Federation provides countervailable subsidies to producers of phosphate fertilizers, and that such imports are

Court No. 21-00117

materially injuring, or threatening material injury to, the domestic phosphate fertilizer industry. Commerce initiated a countervailing duty investigation of phosphate fertilizers from the Russian Federation on July 16, 2020. Phosphate Fertilizers from the Kingdom of Morocco and the Russian Federation: Initiation of Countervailing Duty Investigations, 85 Fed. Reg. 44,505 (Int'l Trade Admin. July 23, 2020). Commerce investigated several alleged subsidy programs, including the following: (1) Provision of Phosphate Mining Rights for Less Than Adequate Remuneration ("LTAR"); and (2) Provision of Natural Gas for LTAR. See Initiation Checklist at 7-9 (July 16, 2020).

　　　　6.　　　Following initiation, Commerce selected Industrial Group Phosphorite LLC ("Phosphorite"), part of the EuroChem Group ("EuroChem"), and Joint Stock Company Apatit ("JSC Apatit"), part of PhosAgro PJSC ("PhosAgro"), as the mandatory respondents in this investigation.[1] See Phosphate Fertilizers from the Russian Federation: Preliminary Affirmative Countervailing Duty Determination, 85 Fed. Reg. 76,524 (Int'l Trade Admin. Nov. 30, 2020) ("Preliminary Determination"), and accompanying Issues and Decision Mem. ("Prelim. DM") at 2. On August 4, 2020, Commerce issued its initial countervailing duty questionnaire to the Government of Russia ("GOR") and instructed the GOR to forward the questionnaire to Phosphorite and JSC Apatit. See Prelim. DM at 2. The GOR, EuroChem, and PhosAgro submitted responses to the initial countervailing duty questionnaire on September 24, 2020. See id. Commerce issued supplemental questionnaires to the respondents between August 28, 2020, and November 3, 2020, and respondents submitted their responses to these supplemental questionnaires between October 21, 2020, and November 12, 2020. Id.

---

[1] In the respondent selection memo, Commerce stated that it selected PhosAgro-Cherepovets (part of PhosAgro PJSC) as a mandatory respondent. However, PhosAgro PJSC reported that the company's legal name is JSC Apatit, and as such Commerce treated JSC Apatit as the mandatory respondent. See Prelim. DM at 2 n.6.

Court No. 21-00117

7.      Commerce issued its Preliminary Determination on November 30, 2020.  With respect to the Provision of Natural Gas for LTAR program, Commerce preliminarily determined that the GOR confers a financial contribution on Phosphorite, JSC Apatit, and their cross-owned affiliates in the form of the provision of a good through sales of natural gas by Gazprom; that the respondents received benefits under this program during the POI; and that the provision of natural gas by Gazprom is *de facto* specific.  See id. at 9-18.

8.      To assess the adequacy of remuneration and thereby calculate the amount of benefit under this program, Commerce applied the hierarchy for selecting a benchmark under 19 C.F.R. § 351.511(a)(2).  Id. at 13.  Commerce preliminarily determined that there were no suitable "tier 1" in-country prices for natural gas in Russia because the market for natural gas is distorted through the GOR's predominant role in the market, via sales by Gazprom, and through other interventions, including controls on imports and exports of natural gas.  Id. at 14. Commerce also preliminarily determined there were no appropriate "tier 2" world market prices, because natural gas export prices from markets in North America, South America, Europe, Africa, and Australia are not prices that would be available to purchasers in Russia.  Id. at 15. Commerce therefore conducted a "tier 3" analysis under 19 C.F.R. § 351.511(a)(2)(iii).  Id. at 16-17.

9.      Section 351.511(a)(2)(iii) of Commerce's regulations provides that, under a "tier 3" analysis of the adequacy of remuneration, Commerce is to examine whether the government price is "consistent with market principles."  19 C.F.R. § 351.511(a)(2)(iii).  Because Commerce found that Gazprom's natural gas prices are not set in accordance with market principles, it looked for an appropriate proxy to determine a market-based natural gas benchmark.  Prelim.

**Court No. 21-00117**

DM at 17.  In this case, Commerce found that the most appropriate proxy was regional European

OECD natural gas prices sourced from the International Energy Agency ("IEA").  Id.

     10.     Commerce derived average quarterly benchmark prices using OECD European

export market prices, with adjustments for delivery charges.  As Commerce explained in the

Preliminary Determination, "when measuring the adequacy of remuneration, Commerce will

adjust the benchmark price to reflect the price the firm actually paid or would pay if it imported

the product, including delivery charges and import duties, *i.e.*, a 'delivered' price to the

company's facility."  Id. at 18.  Therefore, in order to ensure that the quarterly benchmark prices

reflected what the respondents would have paid if they had imported natural gas, Commerce

adjusted the benchmark prices to include delivery charges, import duties, and VAT.[2]  Id.  To

calculate benefit, Commerce compared the monthly benchmark unit prices to the unit prices that

the respondents paid to Gazprom, including delivery charges, surcharges, and taxes during the

POI and, for instances where the benchmark price was greater, multiplied the difference by the

quantity of gas purchased from Gazprom.  Id.  Summing the benefit for each respondent and

dividing this amount by the applicable sales denominators yielded subsidy rates of 68.89 percent

*ad valorem* for Phosphorite and 19.35 percent *ad valorem* for JSC Apatit.  Id.

     11.     With respect to the Provision of Phosphate Mining Rights for LTAR program,

Commerce found that JSC Apatit received two mining licenses from the GOR after April 1,

2002, "which is the date Commerce recognized that Russia made the transition to a market

economy for purposes of the AD and CVD laws."  Id. at 34.  Commerce explained that

"{c}onsistent with our treatment of this program in the *Russia Cold-Rolled Steel* investigation,

we only consider licenses acquired after the 'cut-off' date of April 1, 2002 to be countervailable

---

[2] With respect to delivery charges, the IEA benchmark prices were already calculated on a delivered basis, so Commerce did not add any additional costs for transmission or distribution charges.  See Prelim. DM at 18.

Court No. 21-00117

because the financial contribution, *i.e.*, the issuance of the mining licenses, occurred after the 'cut-off' date."  Id.  Commerce found further that JSC Apatit did not extract phosphate rock during the POI from the two deposits for which licenses were acquired after 2002.  Id.  Commerce therefore concluded that JSC Apatit did not use this program during the POI.  Id.

12.     For Phosphorite, Commerce found that its cross-owned input supplier Joint Stock Company Kovdorsky GOK ("KGOK") received four mining licenses from the GOR, two of which were received after the "cut-off" date of April 1, 2002, and that Phosphorite had demonstrated that none of the terms of the two licenses issued prior to the "cut-off" date were substantially changed since their initial issuance.  Id.  Commerce therefore limited its analysis to the two licenses issued after the "cut-off" date.  Because Commerce did not have enough information to calculate a benefit for these two licenses, it issued a supplemental questionnaire to Phosphorite and addressed the issue of benefit in its Final Determination.  Id.

13.     Mosaic, EuroChem, PhosAgro, and the GOR filed case briefs and rebuttal briefs on January 5, 2021, and January 12, 2021, respectively.  See Final IDM at 3-4.  Mosaic argued in its case brief that Commerce correctly concluded that EuroChem and PhosAgro received countervailable subsidies under the Natural Gas for LTAR program but erred in calculating the benefits from this program.  See Letter from Wilmer Cutler Pickering Hale and Dorr LLP to Sec'y of Commerce, re: Phosphate Fertilizers from Russia: Petitioner's Case Brief (Jan. 5, 2021) ("Petitioner's Case Br.") at 29-32.  In particular, Mosaic argued that Commerce should have adjusted the European OECD natural gas prices sourced from IEA data to remove the Russian price component because of distortions caused by the Russian government.  Id. at 29-30.  As Mosaic explained in its case brief, Commerce has made this adjustment in prior proceedings, including *Steel Concrete Reinforcing Bar from the Republic of Turkey*, C-489-830 ("*Turkey*

6

Court No. 21-00117

*Rebar II*"), id., and the record evidence in the instant investigation—including evidence that
Russia uses its natural gas supplies to exert influence in Europe—supported the same adjustment.
Id. at 30-32.

14.     With respect to the Phosphate Mining Rights for LTAR program, Mosaic argued
that Commerce erred in declining to countervail all of the respondents' phosphate mining rights
subsidies. Id. at 2-24. In particular, Mosaic argued that Commerce's application of a uniform
"cut-off" date of April 1, 2002 is contrary to 19 U.S.C. § 1671 and arbitrary and unreasonable in
this case, because it is possible for Commerce to identify and measure the subsidies that
EuroChem and PhosAgro's affiliates received pursuant to mining licenses that the GOR initially
issued prior to that date. Id. at 2-15. Mosaic argued further that Commerce's decision not to
countervail the relevant subsidies because the "financial contribution" allegedly occurred prior to
April 1, 2002 was also unlawful because mining rights subsidies are recurring subsidies for
which respondents receive the subsidy on an ongoing basis for as long as the GOR continues to
grant EuroChem and PhosAgro the right to extract the underlying resource (phosphate ore) from
the ground, such that the subsidies received during the POI are readily identifiable and
measurable. Id. at 10-14.

15.     In the alternative, Mosaic argued that if Commerce continues to apply the April
1, 2002 "cut-off" date, it should nonetheless find with respect to each respondent's mining
licenses that the GOR made a financial contribution that conferred a benefit, and thus conferred a
subsidy, after the "cut-off" date because the terms of respondents' licenses issued prior to that
date did, in fact, materially change since their initial issuance. Id. at 15-24; Final IDM at 21.
Mosaic also argued in its case brief that Commerce should adjust the world market benchmark
prices for phosphate rock for ocean freight, import duties, and VAT in order to arrive at a

Court No. 21-00117

"delivered" price that respondents would have had to pay if they had imported phosphate rock. Petitioner's Case Br. at 24-26.

16.     Commerce published the Final Determination in the Federal Register on February 16, 2021.  Final Determination, 86 Fed. Reg. at 9479.  In its Final Determination, Commerce rejected Mosaic's arguments that it should remove sales of Russian natural gas from the IEA benchmark data.  Final IDM at 56.  Commerce found that prices for natural gas sold in Europe "are reflective of the market dynamics in that market," and that its findings in the *Turkey Rebar II (2017)* case "pertained to certain record facts that Russian exports to the EU were distorted during the period of review in that proceeding," and "{s}uch information is not on the record of this proceeding pertaining to the POI."  Id.

17.     Commerce also rejected Mosaic's arguments that it should countervail the mining rights subsidies that EuroChem and PhosAgro received pursuant to licenses initially issued prior to the April 1, 2002 "cut-off" date.  Id. at 23-25.  Commerce stated that "prior to {this} cut-off date, the nature of the {non-market economy} meant that intervention by the state would not allow for . . . meaningful identification or measurement of subsidies" and that "application of a uniform 'cut-off' date is reasonable, within its discretion, and administratively practicable."  Id. at 24.  Commerce found further that "notwithstanding any methodology applied in measuring . . . benefit," "the terms and conditions of the licenses were established prior to the time that Commerce recognized Russia had transitioned to a market economy for purposes of the AD and CVD laws," and that "the terms of the phosphate mining licenses issued to both JSC Apatit and KGOK prior to the 'cut-off' date did not substantially change since their initial issuance."  Id.

18.     Commerce also rejected Mosaic's arguments that it should include ocean freight, import duties, and VAT in the mining rights benchmark.  See id. at 26-27.  In particular,

Court No. 21-00117

Commerce found that, since KGOK did not purchase phosphate rock on the market and did not

incur ocean freight, VAT, and import duties in producing phosphate rock, "adding in freight,

VAT, and import duties would not allow for a proper comparison between the costs of the

phosphate rock obtained through the phosphate mining license to the costs of a comparable

phosphate rock with similar $P_2O_5$ content that is available for purchase on the world market on

an FOB basis." Id. at 26.

## STATEMENT OF CLAIMS

### Count 1

19.      Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 18.

20.      Commerce improperly declined to adjust the IEA benchmark prices for natural

gas to exclude exports of Russian natural gas.  Commerce's decision not to make this adjustment

is unsupported by substantial evidence and otherwise not in accordance with law.

### Count 2

21.      Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 18.

22.      Commerce unlawfully declined to countervail mining rights subsidies that

EuroChem and PhosAgro received pursuant to phosphate mining licenses initially issued prior to

the April 1, 2002 "cut-off" date.  Application of this uniform "cut-off" date was unsupported by

substantial evidence and otherwise not in accordance with law.  In addition, Commerce's

findings that the licenses issued to both JSC Apatit and KGOK prior to the "cut-off" date did not

substantially change since their initial issuance are unsupported by substantial evidence and

otherwise not in accordance with law.

### Count 3

23.      Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 18.

Court No. 21-00117

24.     Commerce improperly declined to adjust the benchmark prices for phosphate rock to include international freight, customs duties, and VAT.  Its refusal to make these adjustments is unsupported by substantial evidence and otherwise not in accordance with law.

## REQUEST FOR JUDGMENT AND RELIEF

**WHEREFORE**, for the foregoing reasons, Plaintiff respectfully requests that the Court:

1)     Hold that certain aspects of Commerce's final determination in the countervailing duty investigation of phosphate fertilizers from the Russian Federation are not supported by substantial evidence and otherwise not in accordance with law; and

2)     Remand the final determination to Commerce for disposition in accordance with the Court's final opinion; and

3)     Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Stephanie E. Hartmann
Patrick J. McLain
Stephanie E. Hartmann
WILMER, CUTLER PICKERING
  HALE and DORR, LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
(202) 663-6564
stephanie.hartmann@wilmerhale.com

Date:  May 12, 2021

## UNITED STATES COURT OF INTERNATIONAL TRADE

*The Mosaic Company v. United States*, Ct. No. 21-00117

### Certificate of Service

I, Stephanie E. Hartmann, hereby certify that on May 12, 2021, I caused the attached Complaint to be served by certified or registered mail, return receipt requested, on the following parties and counsel:

Attorney-in-Charge
International Trade Field Office
Commercial Litigation Branch
Civil Division
**U.S. Department of Justice**
26 Federal Plaza
Room 346, Third Floor
New York, NY 10278

Supervising Attorney
Commercial Litigation Branch
Civil Division
**U.S. Department of Justice**
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

General Counsel
Attn: Office of the Chief Counsel for Trade
Enforcement & Compliance
**U.S. Department of Commerce**
1401 Constitution Ave. NW
Washington, DC 20230

Jamieson L. Greer
**J.R. Simplot Company**
King & Spalding LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4706

Daniel Cannistra
**PhosAgro**
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595

Peter J. Koenig, Esq.
**EuroChem North America Corp.**
Squire Patton Boggs (US) LLP
2550 M Street, NW
Suite 300
Washington, DC 20036

Kenneth G. Weigel
**Koch Fertilizer, LLC**
Alston & Bird, LLP
950 F St., NW
Washington, DC 20004

H. Deen Kaplan
**Gavilon Fertilizer, LLC**
Hogan Lovells US LLP
555 Thirteenth Street, NW
Washington, DC 20004

Elena G. Nosyreva
**Representative of Ministry of Economic Development of the Russian Federation**
Presnenskaya nab., 10/2
Moscow, Russia 123112

Aleksandr Zimin
**The Trade Representation of the Russian Federation in the USA**
2650 Wisconsin Avenue
Washington, DC 20007

Matthew J. McConkey, Esq.
**Ministry of Economic Development of the**
**Russian Federation**
Mayer Brown, LLP
1999 K Street, NW
Washington, DC 20006-1101

/s/ Stephanie E. Hartmann
Patrick J. McLain
WILMER CUTLER PICKERING HALE
   and DORR LLP
1875 Pennsylvania Ave. NW
Washington, DC 20006
(202) 663-6564
stephanie.hartmann@wilmerhale.com