C-821-825
Remand
Slip Op. 23-99
POI:  01/01/2019 – 12/31/2019
~~Business Proprietary Document~~
E&C/OVIII:  SS
**PUBLIC VERSION**

*The Mosaic Company v. United States*
**Consol. Court No. 21-00117, Slip Op. 23-99 (CIT July 11, 2023)**
**Phosphate Fertilizers from the Russian Federation**

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

## I.      SUMMARY

The U.S. Department of Commerce (Commerce) has prepared these final results of

redetermination pursuant to the remand opinion and order of the U.S. Court of International

Trade (CIT) in *The Mosaic Company v. United States*, Consol. Court No. 21-00117, Slip Op. 23-

99 (CIT July 11, 2023) (*Second Remand Order*).  These final results of redetermination concern

the final determination in the countervailing duty (CVD) investigation of phosphate fertilizers

from the Russian Federation (Russia), as amended by Commerce's *First Remand Results*.[1]  In the

*First Remand Results*, Commerce countervailed recurring subsidies from mining licenses granted

by the Government of Russia (GOR) prior to Russia's designation as a market economy on April

1, 2002.[2]  In its *Second Remand Order*, the CIT remanded certain aspects of Commerce's *First

Remand Results* for further explanation or reconsideration.  Specifically, the CIT directed

Commerce to:  (1) explain why reconciling phosphate rock cost information to the financial

statements of Joint Stock Company Apatit's (JSC Apatit) parent company, PhosAgro PJSC

---

[1] *See Phosphate Fertilizers from the Russian Federation:  Final Affirmative Countervailing Duty Determination*, 86 FR 9479 (February 16, 2021) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM); *see also Final Results of Redetermination Pursuant to Court Remand, The Mosaic Company, Phosagro PJSC, JSC Apatit, Industrial Group Phosphorite LLC v. United States, The Mosaic Company, Phosagro PSJC, JSC Apatit, Industrial Group Phosphorite LLC*, Consol. Court No. 21-00117 (CIT September 2, 2022), dated December 16, 2022 (*First Remand Results*), available at https://access.trade.gov/resources/remands/22-103.pdf.
[2] *See First Remand Results* at 2.

(PhosAgro),[3] was sufficient, or seek further information from JSC Apatit; (2) explain why it found a submission by Industrial Group Phosphorite LLC (Phosphorite)[4] to be supported, and respond to the petitioner's[5] specific objections regarding this submission; and (3) explain the selection of Profit Before Tax in the benefit calculation for the GOR's provision of mining rights.[6]

On September 19, 2023, Commerce released its Draft Results of Redetermination.[7]  We provided interested parties with an opportunity to comment on the draft results.[8]  On September 26, 2023, the petitioner, EuroChem, and PhosAgro submitted timely comments on the Draft Results of Redetermination.[9]

As set forth in detail below, consistent with the CIT's *Second Remand Order*, we have: (1) explained how JSC Apatit reconciled its phosphate rock cost information to its financial statements in a submission filed after the *First Remand Results*; (2) explained how a translated submission by EuroChem after the *First Remand Results* supported the cost reconciliations that it

---

[3] Commerce determined the following companies to be cross-owned with JSC Apatit in the *Final Determination*: PhosAgro PJSC; PhosAgro-Belgorod LLC; PhosAgro-Don LLC; PhosAgro-Kuban LLC; PhosAgro-Kursk LLC; PhosAgro-Lipetsk LLC; PhosAgro-Orel LLC; PhosAgro-Stavropol LLC; PhosAgro-Volga LLC; PhosAgro-SeveroZapad LLC; PhosAgro-Tambov LLC; and Martynovsk AgrohimSnab LLC.  *See Final Determination*, 87 FR at 9480.  Unless otherwise specified, Commerce has collectively referred to these companies as "PhosAgro" in these final results of redetermination.

[4] Commerce determined the following companies to be cross-owned with Phosphorite in the *Final Determination*: Mineral and Chemical Company EuroChem, JSC; NAK Azot, JSC; EuroChem Northwest, JSC; Joint Stock Company Kovdorksy GOK; EuroChem-Energo, LLC; EuroChem-Usolsky Potash Complex, LLC; EuroChem-BMU, LLC; JSC Nevinnomyssky Azot; and EuroChem Trading Rus, LLC.  *See Final Determination*, 87 FR at 9480.  Unless otherwise specified, Commerce has collectively referred to these companies as "EuroChem" in these final results of redetermination.

[5] The petitioner is The Mosaic Company.

[6] *See Second Remand Order* at 16-20.

[7] *See* Draft Results of Redetermination Pursuant to Court Remand, *The Mosaic Company v. United States*, Consol. Court No. 21-00117, Slip Op. 23-99 (CIT July 11, 2023), dated September 19, 2023 (Draft Results of Redetermination).

[8] *Id.* at 21.

[9] *See* Petitioner's Letter, "Petitioner's Comments on Draft Results of Redetermination Pursuant to Court Remand," dated September 26, 2023 (Petitioner's Draft Remand Comments); *see also* EuroChem's Letter, "EuroChem Comments on Draft Remand Results," dated September 26, 2023 (EuroChem's Draft Remand Comments); and PhosAgro's Letter, "PhosAgro PJSC's Comments on Commerce's Second Draft Results of Redetermination," dated September 26, 2023 (PhosAgro's Draft Remand Comments).

previously provided; and (3) explained why the use of Profit Before Tax in the benefit

calculation for the Provision of Mining Rights for Less Than Adequate Remuneration (LTAR)

program was appropriate.  Based on this analysis, we have made no changes to the subsidy rates

calculated for EuroChem, PhosAgro, and all other producers/exporters in the *First Remand

Results*.[10]

In the "Interested Party Comments" section below, we have addressed the comments

from the petitioner, EuroChem, and PhosAgro on the Draft Results of Redetermination.

## II.     BACKGROUND

In the *First Remand Results*, Commerce did not apply a cut-off date of April 1, 2002 (*i.e.*,

the date on which Commerce designated Russia as a market economy) in examining the

Provision of Mining Rights for LTAR program.  Therefore, we countervailed recurring subsidies

from mining licenses granted by the GOR prior to this date.[11]  Specifically, we determined that

the GOR's sale of mining rights to the respondents prior to April 1, 2002, constituted a financial

contribution in the form of a provision of a good within the meaning of section 771(5)(D)(iii) of

the Tariff Act of 1930, as amended (the Act).[12]  Additionally, we determined that this program

was *de facto* specific within the meaning of section 771(5A)(D)(iii)(I) of the Act.[13]

We requested and received additional information on mining rights that EuroChem and

PhosAgro received prior to April 1, 2002.[14]  In the *First Remand Results*, we followed the

calculation methodology used in the *Final Determination* to determine the level of recurring

---

[10] *See First Remand Results* at 33.
[11] *Id.* at 2.
[12] *Id.* at 13.
[13] *Id.* (citing Memorandum, "Decision Memorandum for the Post-Preliminary Analysis of the Countervailing Duty Investigation of Phosphate Fertilizers from the Russian Federation," dated December 21, 2020, at 5).
[14] *See* EuroChem's Letter, "EuroChem Response to Supplemental Questionnaire," dated October 25, 2022 (EuroChem's 1st Remand SQR); *see also* PhosAgro's Letter, "Response to Supplemental Questionnaire," dated October 25, 2022 (PhosAgro's 1st Remand SQR).

benefits that PhosAgro and EuroChem received from these mining rights during the period of investigation (POI), January 1, 2019, through December 31, 2019.[15]  On this basis, we determined that PhosAgro received a countervailable subsidy of 8.08 percent *ad valorem* under the program during the POI.[16]  For EuroChem, we found that it received no measurable benefit during the POI from the GOR's provision of mining rights.[17]

In the *Second Remand Order*, the CIT sustained certain aspects of Commerce's *First Remand Results*.  However, the CIT remanded three issues for further consideration or explanation.  First, the CIT held that, while Commerce responded specifically to one of the petitioner's challenges regarding JSC Apatit's cost information, Commerce did not address the entirety of the petitioner's objections.[18]  The CIT remanded Commerce to explain why reconciling to PhosAgro's financial statements instead of JSC Apatit's financial statements was sufficient, respond to the petitioner's objections, or seek further information from PhosAgro.[19]  Second, the CIT remanded Commerce to explain why it found a cost submission by EuroChem to be supported, respond to the petitioner's specific objections regarding this submission, and consider allowing EuroChem to supplement the record with an English translation of certain documents.[20]  Third, the CIT held that Commerce did not adequately support its decision to use Profit Before Tax in the benefit calculation for the GOR's provision of mining rights.[21]  The CIT remanded Commerce to further explain why it selected Profit Before Tax in the benefit calculation for PhosAgro.[22]

---

[15] *See First Remand Results* at 13.
[16] *Id*.
[17] *Id*.
[18] *See Second Remand Order* at 16.
[19] *Id.* at 16-17.
[20] *Id.* at 17-18.
[21] *Id.* at 19.
[22] *Id.* at 20.

Consequently, on remand, we issued supplemental questionnaires to PhosAgro and EuroChem.  In the supplemental questionnaire to PhosAgro, we instructed JSC Apatit to reconcile its cost of goods sold for phosphate rock as reported in PhosAgro's 1st Remand SQR to JSC Apatit's POI financial statements.[23]  In the supplemental questionnaire to EuroChem, we requested a fully translated version of Supplemental Exhibit 6 from EuroChem's 1st Remand SQR.[24]  EuroChem and PhosAgro timely responded to these supplemental questionnaires on August 1 and 9, 2023, respectively.[25]

On August 11 and 21, 2023, the petitioner submitted comments on EuroChem's and PhosAgro's respective supplemental questionnaire responses.[26]  Only EuroChem submitted rebuttal comments.[27]  On September 19, 2023, we released the Draft Results of Redetermination.

## III.    DISCUSSION

### A.    PhosAgro's Cost Reconciliation

In the *First Remand Results*, we determined that PhosAgro reported its costs incurred to mine phosphate ore and process the ore into beneficiated phosphate rock during the POI in accordance with our requests.[28]  Additionally, we determined that PhosAgro tied its cost information to its financial statements and provided supporting documentation, as we

---

[23] *See* Commerce's Letter, "Supplemental Questionnaire for PhosAgro PJSC," dated July 26, 2023 (PhosAgro 2nd Remand Supplemental Questionnaire).

[24] *See* Commerce's Letter, "Supplemental Questionnaire," dated July 26, 2023 (EuroChem 2nd Remand Supplemental Questionnaire).

[25] *See* EuroChem's Letter, "EuroChem Response to Supplemental Questionnaire," dated August 1, 2023 (EuroChem's 2nd Remand SQR); *see also* PhosAgro's Letter, "Response to Second Supplemental Questionnaire," dated August 9, 2023 (PhosAgro's 2nd Remand SQR).

[26] *See* Petitioner's Letters, "Petitioner's Deficiency Comments on Industrial Group Phosphorite LLC's Supplemental Questionnaire Responses," dated August 11, 2023; and "Petitioner's Comments on PhosAgro PJSC's and JSC Apatit's Response to Second Supplemental Questionnaire," dated August 21, 2023 (Petitioner's Deficiency Comments on PhosAgro's 2nd Remand SQR).

[27] *See* EuroChem's Letter, "EuroChem Rebuttal Comments to Petitioner's Deficiency Comments," dated August 21, 2023.

[28] *See First Remand Results* at 22.

requested.[29]  The CIT, however, held that Commerce's supplemental questionnaire to PhosAgro requested specifically that JSC Apatit reconcile its reported costs to JSC Apatit's POI financial statements, and Commerce did not explain why the reconciliation of JSC Apatit's cost information to PhosAgro's financial statements (*i.e.*, the parent company of JSC Apatit) was sufficient.[30]  The CIT remanded Commerce to "explain why reconciling to PhosAgro's statements was sufficient and respond to {the petitioner's} objection or seek further information from the respondent."[31]

After the CIT's issuance of the *Second Remand Order*, we requested a reconciliation of JSC Apatit's cost of phosphate rock sold during the POI to JSC Apatit's financial statements for the POI.[32]  In PhosAgro's 2nd Remand SQR, JSC Apatit provided this reconciliation.  First, JSC Apatit tied its total POI cost of sales of [                    ] from its accounting system to [                         ] its 2019 financial statements.[33]  Next, JSC Apatit provided a breakdown of the individual items that compose its POI cost of sales, including [            ] for phosphate rock.[34]  The [             ] figure ties directly to the POI costs for phosphate rock that JSC Apatit originally reported in JSC Apatit's 1st Remand SQR.[35]  JSC Apatit provided records from its accounting system to support this figure and other components of its POI cost of sales.[36]

---

[29] *Id.*
[30] *See Second Remand Order* at 16; *see also* Commerce's Letter, "Supplemental Questionnaire," dated October 14, 2022 (PhosAgro Investigation Supplemental Questionnaire), at Attachment I.
[31] *See Second Remand Order* at 16.
[32] *See* PhosAgro 2nd Remand Supplemental Questionnaire at 4.
[33] *See* PhosAgro's 2nd Remand SQR at 3-4 and Exhibit REM-8.
[34] *Id.*  This POI cost of sales figure [                                    ].  JSC Apatit's [                    ].  *Id.* at 2-4; *see also* JSC Apatit's Letter, "PhosAgro PJSC Affiliate Questionnaire Response," dated August 18, 2020, at Exhibit 1.
[35] *Id.*; *see also* PhosAgro's 1st Remand SQR at 3-4 and Exhibit REM-3.
[36] *See* PhosAgro's 2nd Remand SQR at 3-4 and Exhibits REM-8 to REM-14.

Based on this information, we find that JSC Apatit has adequately reconciled its reported production costs for phosphate rock to its POI financial statements and provided documentation to support this reconciliation.  On this basis, consistent with the *First Remand Results*, we find no record evidence that leads us to doubt the reliability or veracity of JSC Apatit's reported costs incurred to mine and process phosphate ore into beneficiated phosphate rock.[37]  Accordingly, we conclude that JSC Apatit's reported cost data are reliable to use in the mining rights cost buildup for the Provision of Mining Rights for LTAR benefit calculation.[38]

Finally, although the petitioner raised two issues with JSC Apatit's reporting in JSC Apatit's 2nd Remand SQR, we find no deficiencies in JSC Apatit's reporting based on these comments.  First, the petitioner argued that JSC Apatit's explanations for certain reconciling items were inadequate.[39]  For example, [

] the petitioner argued that JSC Apatit "[

]."[40]  However, we requested that JSC Apatit reconcile its cost of goods sold (COGS) for phosphate rock as reported in PhosAgro's 1st Remand SQR to JSC Apatit's audited POI financial statements that we originally requested during the investigation.[41]  We find that JSC Apatit's response satisfied this request.  We did not request [                                        ] to analyze whether individual items in JSC Apatit's audited financial statements are in accordance with [

---

[37] *See First Remand Results* at 22.
[38] *Id.*
[39] *See* Petitioner's Deficiency Comments on PhosAgro's 2nd Remand SQR at 2-3.
[40] *Id.* at 3.
[41] *See* PhosAgro 2nd Remand Supplemental Questionnaire at 4; *see also* Commerce's Letter, "Countervailing Duty Questionnaire," dated August 4, 2020, at Section III (pp. 4-5).

].[42]   Moreover, an analysis of [                    ] JSC Apatit's

audited financial statements is outside the scope of these final results of redetermination.

Information in a respondent's audited financial statements is the foundation of our subsidy rate

calculations.[43]   The petitioner has not previously raised the issue of whether JSC Apatit's audited

financial statements [                                        ], and this issue is

distinct from the issue addressed on remand:  *i.e.*, whether JSC Apatit's reported cost

information ties to its audited financial statements.  Consequently, we find that the petitioner has

failed to identify any specific deficiencies in JSC Apatit's reconciliation.

Second, the petitioner argued that there was a "minor discrepancy" in a worksheet in JSC

Apatit's 2nd Remand SQR.  Specifically, the petitioner argued that in Exhibit REM-3(3), [

].[44]  The petitioner

claimed that [                                        ].[45]  However, [

] of this worksheet is

[              ], and [

].[46]  Because the "minor discrepancy" alleged by the petitioner is unclear, and no

discrepancy (minor or otherwise) is evident, the petitioner's allegation cannot be addressed.

**B.**     **EuroChem's Cost of Production Records**

Regarding EuroChem's 1st Remand SQR, the CIT stated that the petitioner "raised

specific objections to the data that some of the submitted spreadsheets were in Russian and

---

[42] *Id.*
[43] *See, e.g.*, Commerce's Letter, "Supplemental Questionnaire in Lieu of On-Site Verification," dated December 14, 2020, at 3.
[44] *See* Petitioner's Deficiency Comments on PhosAgro's 2nd Remand SQR at 3-4.
[45] *Id.*
[46] *See* PhosAgro's 2nd Remand SQR at Exhibit REM-3(3).

untranslated, specific products included as costs did not appear to be related to phosphate production, and some of the calculations lacked an explained methodology."[47]  Further, the CIT stated that "Commerce's regulations and supplemental questionnaire required EuroChem to submit documents in a foreign language with an English translation."[48]  Consequently, the CIT held it could not "ascertain on what basis Commerce accepted EuroChem's submission as accurate."[49]

On remand, Commerce is tasked with explaining why EuroChem's submission is supported and responding to the petitioner's specific objections.[50]  We note, however, that the *Second Remand Order* allowed for Commerce to re-open the administrative record such that EuroChem could provide an English translation.[51]  Consequently, on remand, we requested a fully translated version of Supplemental Exhibit 6 of EuroChem's 1st Remand SQR.[52]  EuroChem timely submitted a response to our request.[53]  As detailed below, we find that the documentation supports the cost reconciliation that EuroChem provided in EuroChem's 1st Remand SQR.  Accordingly, we continue to find that EuroChem's reported cost data are reliable for use in the cost buildup for the Provision of Mining Rights for LTAR benefit calculation.[54]

In its initial questionnaire response during the investigation, EuroChem reported that Joint Stock Company Kovdorksy (KGOK) obtained mining rights licenses [

] and [                    ].[55]  EuroChem mined phosphate ore under license [                    ]

---

[47] *See Second Remand Order* at 17.
[48] *Id.*
[49] *Id.* at 17-18.
[50] *Id.* at 18.
[51] *Id.*
[52] *See* EuroChem 2nd Remand Supplemental Questionnaire at Attachment.
[53] *See* EuroChem's 2nd Remand SQR.
[54] *See First Remand Results* at 22.
[55] *See* EuroChem's Letter, "Phosphate Fertilizers From Russian Federation," dated September 24, 2020, at 29.

during the POI, but did not mine under license [          ].[56]  Later in the investigation,

EuroChem provided a reconciliation between KGOK's costs to produce phosphate rock (or

"phosphate concentrate") from ore mined under license [          ] and KGOK's financial

statements.[57]  In this reconciliation, EuroChem provided:  [

].[58]  Commerce ultimately relied on KGOK's

reporting of the COP for phosphate rock from license [          ] to calculate EuroChem's

benefit for the Provision of Mining Rights for LTAR program in the *Final Determination*.[59]

Accordingly, for these final results of redetermination, on remand, we have not revisited

KGOK's cost calculation for license [

] in EuroChem's Investigation SQR.[60]

After the *First Remand Order*, we issued a supplemental questionnaire to EuroChem

requesting KGOK to report its costs to mine and process phosphate ore into beneficiated

phosphate rock during the POI under any mining licenses obtained prior to April 1, 2002.[61]  We

also requested that KGOK reconcile these costs to its 2019 financial statements.[62]  In response,

---

[56] *Id.* at 35.
[57] *See* EuroChem's Letter, "Phosphate Fertilizers from Russia," dated December 7, 2020 (EuroChem's Investigation SQR), at 4-5.
[58] *Id.* at 5 and Exhibit 6.
[59] *See* Memorandum, "Final Determination Calculations for EuroChem Group," dated February 8, 2021, at 3.  Based on this information, Commerce determined that EuroChem received no measurable benefit during the POI.  *Id.* at 4.
[60] *See* EuroChem's Investigation SQR at 4-5 and Exhibit 6.
[61] *See* PhosAgro Investigation Supplemental Questionnaire at Attachment.
[62] *Id.*

EuroChem explained that KGOK obtained two mining licenses prior to April 1, 2002:  [

].[63]  EuroChem provided the requested POI

cost information and reconciliation for KGOK's mining licenses obtained prior to April 1, 2002.

In this reconciliation, KGOK's [



] all matched the reconciliation that KGOK provided for the [                ]

license.[64]  Therefore, other than providing information specific to the two mining licenses

obtained prior to April 1, 2002, KGOK's overall reconciliation of its cost information to its

financial statements was unchanged from the reconciliation that it provided during the

investigation.

     In EuroChem's 1st Remand SQR, KGOK reported its allocation of costs to phosphate

concentrate from licenses [          ] and [          ], and it provided supporting documentation

for this allocation.[65]  First, EuroChem provided KGOK's 2019 [

].[66]  Next, EuroChem provided a printout of

KGOK's [                                    ] during the POI, which also

showed [                          ].[67]  EuroChem filtered these [

].[68]  Even though this

[                        ], the [

---

[63] *See* EuroChem's 1st Remand SQR at 1.
[64] *See* EuroChem's Investigation SQR at 4-5 and Exhibit 6; *see also* EuroChem's 1st Remand SQR at 2 and Supplemental Exhibit 6.
[65] *See* EuroChem's 1st Remand SQR at 2 and Supplemental Exhibit 6.
[66] *Id.* at 2-3 and Supplemental Exhibit 6.
[67] *Id.* at [                          ] Microsoft Excel worksheet.
[68] *Id.* at [                            ] Microsoft Excel worksheet.

].[69]  The [

].[70]  This figure tied to KGOK's [

] identified in KGOK's reconciliation at page two of EuroChem's

1st Remand SQR.

As explained above, in EuroChem's Investigation SQR and EuroChem's 1st Remand

SQR, KGOK reported [

] in its reconciliations.[71]  The [

].″[72]  [                                        ] in EuroChem's Investigation SQR

and EuroChem's 1st Remand SQR.[73]  KGOK's allocation of [

] license in EuroChem's Investigation SQR resulted in total costs of

[                    ] for this license.[74]  For the [          ] and [          ] licenses, KGOK allocated

[

]″[75]  This resulted in total costs of

[                    ] allocated to licenses [          ] and [          ].[76]  The sum of costs allocated

to licenses [                ], [              ], and [          ] equals [

].  This is the total that we used in the benefit calculations for EuroChem in

the *First Remand Results*.[77]

---

[69] *Id.*
[70] *Id.*
[71] *See* EuroChem's Investigation SQR at 5; *see also* EuroChem's 1st Remand SQR at 2.
[72] *See* EuroChem's Investigation SQR at Exhibit 6; *see also* EuroChem's 1st Remand SQR at Supplemental Exhibit 6.
[73] *Id.*
[74] *See* EuroChem's Investigation SQR at 5.
[75] *Id.* at Exhibit 6 (page 329); *see also* EuroChem's 1st Remand SQR at 2 and Supplemental Exhibit 6.
[76] *See* EuroChem's 1st Remand SQR at 2 and Supplemental Exhibit 6.
[77] *See* Memorandum, "Draft Remand Redetermination Calculations for EuroChem Group," dated November 18, 2022, at 2 and Attachment 2, unchanged in *First Remand Results*.

In the *First Remand Results*, we determined that EuroChem appropriately reported its costs incurred to mine phosphate ore and process the ore into beneficiated phosphate rock during the POI in accordance with our requests.[78]  EuroChem's overall cost reconciliation and breakdown of its production costs for phosphate concentrate were already on the record in EuroChem's Investigation SQR.[79]  The overall reconciliation and breakdown of production costs were unchanged in EuroChem's 1st Remand SQR.[80]  However, as explained above, certain portions of KGOK's [                                    ] at Supplemental Exhibit 6 of EuroChem's 1st Remand SQR, which KGOK provided to support its allocation of costs to licenses [          ] and [          ], were untranslated.  Following the *Second Remand Order*, we requested that EuroChem provide a fully translated version of Supplemental Exhibit 6.[81]  Based on the information that EuroChem provided in response to our request, we continue to find KGOK's reported cost data to be reliable for use in the cost buildup for the Provision of Mining Rights for LTAR benefit calculation.

In EuroChem's 2nd Remand SQR, EuroChem provided translated versions of the Microsoft Excel worksheets in Supplemental Exhibit 6 of EuroChem's 1st Remand SQR.  First, the fully translated printout of KGOK's [                                              ] during the POI identifies [                                    ] on KGOK's 2019 [                    ].[82]  In addition to [

                                                                                      ].[83]  Separately, EuroChem provided

---

[78] *See First Remand Results* at 22.
[79] *See* EuroChem's Investigation SQR at 5 and Exhibit 6.
[80] *See* EuroChem's 1st Remand SQR at 2 and Supplemental Exhibit 6.
[81] *See* EuroChem 2nd Remand Supplemental Questionnaire at Attachment.
[82] *See* EuroChem's 2nd Remand SQR at [                    ] Microsoft Excel worksheet; *see also* EuroChem's 1st Remand SQR at Supplemental Exhibit 6.
[83] *See* EuroChem's 2nd Remand SQR at [                    ] Microsoft Excel worksheet.

a fully translated printout of the [

] in EuroChem's 1st Remand SQR.[84]  [

] in this filtered Microsoft Excel worksheet is [                    ],

which ties directly to KGOK's [                              ] during the POI as

reported in EuroChem's 1st Remand SQR and EuroChem's Investigation SQR.[85]  In this filtered

worksheet, the [

]."[86]  Further, the "[

]."[87]  Filtering the worksheet with [

].[88]  Therefore, the translated worksheets in EuroChem's 2nd Remand SQR tie directly to

KGOK's [                         ] in its reconciliations.

Accordingly, based on the accounting records that EuroChem provided, the [

] figure represents KGOK's [                                    ] during the POI.  On this

basis, we find that the documentation in EuroChem's 2nd Remand SQR supports EuroChem's

reconciliations provided in EuroChem's 1st Remand SQR and EuroChem's Investigation SQR.

We find no evidence, for example, in the translated [                                    ]

to conclude that EuroChem included costs unrelated to the mining of phosphate ore and

processing of phosphate rock in its reported costs.  To the contrary, the fully translated version of

---

[84] *See* EuroChem's 2nd Remand SQR at [                         ] Microsoft Excel worksheet; *see also*
EuroChem's 1st Remand SQR at [                         ] Microsoft Excel worksheet.
[85] *See* EuroChem's 2nd Remand SQR at [                         ] Microsoft Excel worksheet.
[86] *Id.*
[87] *Id.*
[88] *Id.* at [                ] Microsoft Excel worksheet.

Supplemental Exhibit 6 shows that EuroChem based its reported costs for phosphate rock on

KGOK's [                                        ] during the POI.

In comments on EuroChem's 2nd Remand SQR, the petitioner alleged additional

deficiencies in EuroChem's reporting.[89]  However, we find no deficiencies in EuroChem's

reporting based on the petitioner's comments.  For example, the petitioner argued that "[



]."[90]

However, the [        ] Microsoft Excel worksheet, which is [

] licenses, does not show any

untranslated sections.[91]  More importantly, the petitioner has failed to show how any allegedly

untranslated sections in this worksheet conflict with the translated [                    ],

which tie to KGOK's [                                ] and its financial

statements.[92]

Additionally, the petitioner argued that "[



]."[93]  However,

EuroChem's 2nd Remand SQR shows that KGOK [

].  As

explained above, KGOK's reported [

---

[89] *See* Petitioner's Comments on EuroChem's 2nd Remand SQR.
[90] *Id.* at 3.
[91] *See* EuroChem's 2nd Remand SQR at [        ] Microsoft Excel worksheet; *see also* EuroChem's 1st Remand SQR at 2.
[92] *See* EuroChem's 2nd Remand SQR at [                            ] Microsoft Excel worksheets.
[93] *See* Petitioner's Comments on EuroChem's 2nd Remand SQR at 3.

].[94]  Costs for [

].[95]  Therefore, based on the translated

records provided by EuroChem, KGOK's reported [                          ] at page

two of EuroChem's 1st Remand SQR [

].

Where possible, Commerce will rely on a respondent's reported information to determine

the existence and the amount of the benefit to the extent that such information is usable and

verifiable.[96]  We find no evidence that EuroChem improperly included costs not related to

phosphate ore mining and phosphate rock production in its reported costs.  We also find that

EuroChem reconciled KGOK's reported costs to KGOK's financial statements, as we requested.

Accordingly, as in the *First Remand Results*, we continue to find that KGOK's reported cost data

are reliable for use in the mining rights cost buildup for the Provision of Mining Rights for

LTAR benefit calculation.[97]

### C.    Use of Profit Before Tax in Profit Ratio Calculation for PhosAgro

In the *First Remand Results*, and consistent with the *Final Determination*, we used Profit

Before Tax to calculate PhosAgro's profit ratio for the Provision of Mining Rights for LTAR

benefit calculation.[98]  However, the CIT held that Commerce did not adequately support its

---

[94] *See* EuroChem's 2nd Remand SQR at [                                                   ] Microsoft Excel
worksheets; *see also* EuroChem's 1st Remand SQR at 2.
[95] *See* EuroChem's 2nd Remand SQR at [                  ] Microsoft Excel worksheet; *see also* EuroChem's 1st
Remand SQR at Supplemental Exhibit 6.
[96] *See, e.g.*, *Narrow Woven Ribbons with Woven Selvedge from the People's Republic of China:  Preliminary Results
of Countervailing Duty Administrative Review; 2016*, 83 FR 50891 (October 10, 2018), and accompanying
Preliminary Decision Memorandum at the section, "D. Provision of Synthetic Yarn for LTAR," unchanged in
*Narrow Woven Ribbons with Woven Selvedge from the People's Republic of China:  Final Results of Countervailing
Duty Administrative Review; 2016*, 84 FR 11052 (March 25, 2019).
[97] *See First Remand Results* at 22.
[98] *Id.* at 24-25.

decision to use Profit Before Tax, as opposed to Gross Profit.[99]  As the CIT explained, "{a}lthough the court's remand order instructed Commerce to measure the mining right subsidy using the same methodology as before, the court did not rule on the specific calculations because no party raised any issue with the profit ratio."[100]  Accordingly, on remand, we have further considered the use of PhosAgro's Profit Before Tax versus Gross Profit for the profit ratio calculation.  For the reasons explained below, we continue to find that the use of Profit Before Tax instead of Gross Profit in the benefit calculation is appropriate.

PhosAgro's publicly available POI financial statements on the record identify the difference between Gross Profit and Profit Before Tax as follows:

> **Revenue**
> - Cost of Sales
> **= Gross Profit**
> - Administrative Expenses
> - Selling Expenses
> - Taxes, Other Than Income Tax
> - Other Expenses, Net
> **= Operating Profit**
> + Finance Income
> - Finance Costs
> + Foreign Exchange Gain, Net
> **= Profit Before Tax**.[101]

Thus, compared to Gross Profit, Profit Before Tax excludes:  (1) selling and administrative expenses; (2) taxes other than income taxes; and (3) "Other Expenses," while it includes net financing income and net foreign exchange gains.  In the benefit calculations for the Provision of Mining Rights for LTAR program, profit is a component of each respondent's phosphate rock

---

[99] *See Second Remand Order* at 19-20.
[100] *Id.* at 19.
[101] *See* PhosAgro's Letter, "PhosAgro PJSC Initial Section III CVD Questionnaire Response," dated September 24, 2020 (PhosAgro's IQR), at Exhibit CVD-6.

cost buildup that we compare to a benchmark price.[102]  Using Profit Before Tax instead of Gross Profit results in the exclusion of items such as selling and administrative expenses from the numerator of the profit ratio calculation.[103]

As the CIT explained in its *Second Remand Order*, "PhosAgro claims that using Profit Before Tax instead of Gross Profit would leave important considerations, such as administrative and selling expenses, out of the profit comparison."[104]  However, in the *Final Determination*, we explained:

> Under this "Tier Three" approach, we based our benchmark on the value of the underlying good conveyed via mining rights.  As a result of this approach, our benefit analysis focused on the production costs of phosphate ore extracted and phosphate rock produced by KGOK during the POI from the mining deposit tied to the license in question.[105]

As we further elaborated in the *First Remand Results*, "{w}e requested that both companies report all costs incurred to mine phosphate ore and process the ore into beneficiated phosphate rock during the POI … no record evidence leads us to conclude that the reported costs are unrelated to the mining and processing of phosphate ore."[106]  We find that using Gross Profit, and, therefore, including items such as selling and administrative expenses in the numerator of the profit ratio calculation for PhosAgro, would be inconsistent with the aim of the calculation methodology described in the *Final Determination* and the *First Remand Results*, which is to isolate costs for phosphate ore mining and beneficiation activities.  As detailed above, our benefit analysis focuses on the costs to mine and process phosphate ore into beneficiated phosphate rock

---

[102] *See, e.g.*, Memorandum, "Draft Remand Redetermination Calculations for PhosAgro PJSC," dated November 18, 2022 (PhosAgro 1st Remand Draft Calculation Memorandum), at 2; *see also* Memorandum, "Final Remand Redetermination Calculations for PhosAgro PJSC," dated December 16, 2022 (PhosAgro 1st Remand Final Calculation Memorandum), at 2.
[103] To calculate PhosAgro's profit ratio, we divided Profit Before Tax by PhosAgro's 2019 cost of sales.  *Id.*; *see also First Remand Results* at 24-25.
[104] *See Second Remand Order* at 19.
[105] *See Final Determination* IDM at Comment 2c.
[106] *See First Remand Results* at 22.

during the POI from deposits related to the mining licenses in question.[107]  While PhosAgro argued that using Profit Before Tax instead of Gross Profit excludes selling and administrative expenses from the profit ratio,[108] the record does not show that all of the expenses within these financial statement line items relate to the mining of phosphate ore and/or production of phosphate rock.  To the contrary, we have no information on the specific expenses that PhosAgro's income statement line items such as "Selling Expenses," "Administrative Expenses," and "Other Expenses" comprise.[109]  Therefore, using Gross Profit, instead of Profit Before Tax, would include costs unrelated to the mining of phosphate ore and production of phosphate rock in the profit ratio calculation.  Given the aim of the benefit calculation methodology indicated above, we find that using a more narrowly focused profit figure that excludes expenses unrelated to mining and beneficiation activities is more appropriate in this instance.

Information demonstrating that specific expenses from the categories listed above relate directly to phosphate ore mining and beneficiation activities would support adding them to Profit Before Tax in the numerator of the profit ratio calculation, as long as the expenses are not double-counted.  For example, PhosAgro provided evidence that JSC Apatit incurred certain environmental compliance expenses to produce phosphate rock during the POI.[110]  These environmental compliance expenses were not part of JSC Apatit's reported COP for phosphate rock because JSC Apatit records the payments separately in its accounting system.[111]  In the *First Remand Results*, we found no evidence that JSC Apatit had already included these environmental compliance expenses in its reported COP.[112]  Consequently, we found no evidence that adding

---

[107] *See Final Determination* IDM at Comment 2c.
[108] *See Second Remand Order* at 19 (citing PhosAgro's IQR at Exhibit CVD-6).
[109] *See* PhosAgro's IQR at Exhibit CVD-6.
[110] *See First Remand Results* at 30.
[111] *Id.*
[112] *Id.*

these expenses to JSC Apatit's reported COP would result in double counting, and we included these expenses in JSC Apatit's cost buildup for phosphate rock.[113]

By contrast, we have no basis to conclude that the entire amounts of the income statement line items cited above relate to the mining of phosphate ore and production of phosphate rock. Moreover, our inclusion of these broad income statement line items (*e.g.*, "Other Expenses") in the numerator of the profit ratio calculation results in double counting expenses in the profit ratio and the phosphate rock cost buildup for PhosAgro.[114]  Unlike the situation described above for JSC Apatit's environmental compliance expenses, we have no evidence that specific expenses within these income statement line items are not already included in PhosAgro's phosphate rock cost buildup.  On this basis, we continue to find that the use of Profit Before Tax as the numerator in the profit ratio calculation for PhosAgro instead of Gross Profit is appropriate.

## IV.    INTERESTED PARTY COMMENTS

### A.    PhosAgro's Cost Reconciliation

*PhosAgro's Comments*

- In the Draft Results of Redetermination, Commerce correctly relied on the cost reconciliation that JSC Apatit provided in PhosAgro's 2nd Remand SQR.  On this basis, Commerce correctly used JSC Apatit's reported costs in its benefit calculation for the Provision of Mining Rights for LTAR program.[115]
- Commerce explained its reliance on JSC Apatit's cost data and demonstrated that the data are supported by substantial evidence.  Accordingly, Commerce should maintain its Draft Results of Redetermination in this respect.[116]

No other party commented on Commerce's analysis of this issue in the Draft Results of Redetermination.

---

[113] *Id.*

[114] We have addressed record evidence of double counting in section IV.C, "Use of Profit Before Tax in Profit Ratio Calculation for PhosAgro," *infra*.

[115] *See* PhosAgro's Draft Remand Comments at 2-3.

[116] *Id.* at 3.

**Commerce's Position:**

PhosAgro agrees that Commerce should continue to rely on JSC Apatit's cost data, and no other party commented on Commerce's analysis of this issue in the Draft Results of Redetermination.  As explained above, we determine that JSC Apatit has adequately reconciled its reported production costs for phosphate rock to its POI financial statements.  On this basis, we continue to find that JSC Apatit's reported cost data are reliable to use in the Provision of Mining Rights for LTAR benefit calculation.  Accordingly, our analysis of this issue from the Draft Results of Redetermination remains unchanged.[117]

### B.    EuroChem's Cost of Production Records

*EuroChem's Comments*

- Commerce correctly determined that EuroChem's 2nd Remand SQR supported the cost reconciliation that EuroChem provided in EuroChem's 1st Remand SQR.  Commerce fully addressed the petitioner's objections and correctly found EuroChem's cost data to be reliable.[118]
- Commerce's decision with respect to EuroChem should be under respectful protest because the petitioner failed to exhaust its administrative remedies during the original investigation.  For the first time, the petitioner objected to EuroChem's submission of a Microsoft Excel file because it contained non-translated elements.[119]
- If the petitioner's failure to object during the investigation or its initial CIT challenge is not a bar to Commerce addressing the petitioner's argument, then Commerce should re-address its original decision from the investigation regarding the countervailability of the provision of natural gas for LTAR.[120]

No other party commented on Commerce's analysis of this issue in the Draft Results of Redetermination.

---

[117] *See* Draft Results of Redetermination at 5-8.
[118] *See* EuroChem's Draft Remand Comments at 2.
[119] *Id.* at 2-4.
[120] *Id.* at 4-6.

**Commerce's Position:**

EuroChem agrees that Commerce correctly relied on KGOK's cost data, and no other party commented on Commerce's analysis of this issue in the Draft Results of Redetermination. As explained above, we determine that EuroChem adequately reconciled KGOK's reported costs to KGOK's financial statements. On this basis, we continue to find that KGOK's reported cost data are reliable for use in the Provision of Mining Rights for LTAR benefit calculation. Accordingly, our analysis of this issue from the Draft Results of Redetermination remains unchanged.[121]

We disagree with EuroChem, however, that Commerce should issue its final results of redetermination under protest. In the *Second Remand Order*, the CIT directed Commerce to explain why EuroChem's submission was supported and respond to the petitioner's specific objections.[122] Consistent with the *Second Remand Order*, Commerce re-opened the record to allow EuroChem to provide an English translation.[123] Consequently, we requested a fully translated version of Supplemental Exhibit 6 of EuroChem's 1st Remand SQR, which EuroChem provided.[124] Regardless of whether EuroChem submitted some of the same reconciliation documents during the investigation and in EuroChem's 1st Remand SQR, the CIT instructed Commerce to explain why the documents in EuroChem's 1st Remand SQR were supported.[125] Accordingly, we have not issued these final results of redetermination under protest. We have also not re-addressed our original determination regarding the countervailability of the Provision of Natural Gas for LTAR program, as the CIT did not instruct Commerce to do so in the *Second*

---

[121] *See* Draft Results of Redetermination at 8-16.
[122] *See Second Remand Order* at 18.
[123] *Id.*
[124] *See* EuroChem's 2nd Remand SQR.
[125] *See Second Remand Order* at 18.

*Remand Order*.  The *Second Remand Order* addresses the Provision of Mining Rights for LTAR

program, and not the Provision of Natural Gas for LTAR program.[126]

### C.    Use of Profit Before Tax in Profit Ratio Calculation for PhosAgro

*Petitioner's Comments*

- The Draft Results of Redetermination support Commerce's selection of PhosAgro's Profit Before Tax in the benefit calculation for the Provision of Mining Rights for LTAR program.[127]
- PhosAgro failed to demonstrate that specific items on PhosAgro's income statement, such as "Selling Expenses," "Administrative Expenses," and "Other Expenses," relate to phosphate ore extraction or phosphate rock production.[128]
- Additionally, Commerce correctly found that the inclusion of such items in the numerator of the profit ratio may risk double counting.[129]

*PhosAgro's Comments*

- By using Profit Before Tax instead of Gross Profit, Commerce excluded important expenses and business considerations (*e.g.*, selling and administrative expenses) from the profit ratio calculation for the Provision of Mining Rights for LTAR program.[130]
- Commerce excluded these expenses on the basis that they do not solely relate to phosphate rock production.  Nevertheless, Commerce used Profit Before Tax, which includes net financing income and net foreign exchange gains that also do not solely relate to phosphate ore production.[131]
- JSC Apatit's pricing and profits are not determined in a vacuum.  Rather, they are based on items such as selling, administrative, and overhead expenses.  Commerce must consider these expenses to determine an adjusted COP value for comparison to an export sales price benchmark.[132]
- Commerce's comparison benchmark for this program reflects sales prices for phosphate rock exports from certain countries.  To determine sales prices, exporters of phosphate rock from these countries must consider all expenses, including selling and administrative expenses.[133]
- Expenses such as selling, administrative, and overhead expenses are allocated over all of PhosAgro's operations, rather than over specific segments of the company.  Accordingly, to calculate the profit ratio, Commerce should divide PhosAgro's Gross Profit of

---

[126] Commerce addressed parties' arguments on the Provision of Natural Gas for LTAR program in the *Final Determination*.  *See Final Determination* IDM at Comments 3a to 3o.
[127] *See* Petitioner's Draft Remand Comments at 2.
[128] *Id.* at 2-3.
[129] *Id.* at 3.
[130] *See* PhosAgro's Draft Remand Comments at 5.
[131] *Id.* at 6.
[132] *Id.* at 7.
[133] *Id.* at 8.

111,901,000,000 RUB from its 2019 Consolidated Financial Statements by PhosAgro's Cost of Sales amount (136,224,000,000 RUB) from the same source.[134]

- Alternatively, if Commerce continues to use Profit Before Tax instead of Gross Profit, the agency should derive and apply expense ratios for the additional expenses such as Administrative Expenses (16,476,000,000 RUB) and Selling Expenses (38,121,000,000 RUB). Commerce can calculate these expense amounts by dividing JSC Apatit's relevant expense figures by PhosAgro's Cost of Sales of 136,224,000,000 RUB.[135]

**Commerce's Position:**

Section 351.511(a)(2)(iii) of Commerce's regulations provides that, in situations where "there is no world market price available to purchasers in the country in question, {Commerce} will normally measure the adequacy of remuneration by assessing whether the government price is consistent with market principles." The regulations do not, however, prescribe a methodology for Commerce to follow in such situations.[136] In the *First Remand Results*, we included profit in the cost buildup for PhosAgro's benefit calculation pursuant to 19 CFR 351.511(a)(2)(iii) for the Provision of Mining Rights for LTAR program.[137] Our approach was not only consistent with that in the *Final Determination*, in which we included an amount for profit, but also with the *First Remand Order* – to calculate PhosAgro's benefit "using the same methodology applied to the lone analyzed mining license {for EuroChem}."[138] In the *Second Remand Order*, the CIT instructed Commerce to "consider PhosAgro's arguments and explain why it selected Profit Before Tax for the profit ratio," but not to explain each step of the overall calculation methodology.[139] Given that the regulations at 19 CFR 351.511(a)(2)(iii) do not prescribe a specific methodology, we have addressed interested parties' comments below by considering the

---

[134] *Id.* at 7-8.
[135] *Id.* at 8.
[136] *See, e.g.*, Certain *Uncoated Paper from Indonesia: Final Affirmative Countervailing Duty Determination*, 81 FR 3104 (January 20, 2016), and accompanying IDM at 15-16 ("Provision of Standing Timber for Less Than Adequate Remuneration") (where Commerce found that the government price was not set in accordance with market principles and, thus, sought a proxy to determine a market-based stumpage benchmark)).
[137] *See First Remand Results* at 13 and 24-25.
[138] *Id.*; *see also Final Determination* IDM at Comments 2c and 2f; and *First Remand Order* at 39.
[139] *See Second Remand Order* at 19-20.

objective of our benefit calculation and certain inaccuracies that may result from using one profit amount versus another.

For these final results of redetermination, we continue to find that using Profit Before Tax instead of Gross Profit as the numerator in the profit ratio calculation for PhosAgro is appropriate.  As we explained in the Draft Results of Redetermination, our objective is to isolate PhosAgro's costs for phosphate ore mining and beneficiation.[140]  Consequently, we find that using a more narrowly focused profit figure that excludes expenses unrelated to mining and beneficiation activities is more appropriate in this instance, as explained below.  Additionally, as further explained below, the use of Profit Before Tax not only eliminates an instance of double counting resulting from using Gross Profit, but also mitigates the risk of additional instances evident from the record.

In the Draft Results of Redetermination, we explained that we have no information on the specific expenses that PhosAgro's income statement line items such as "Selling Expenses," "Administrative Expenses," and "Other Expenses" comprise.[141]  For example, we cannot identify the specific cost centers within PhosAgro that incurred these expenses (*e.g.*, phosphate ore mining, production of finished phosphate fertilizers, finished goods transportation, *etc.*).  Although we do not have information on these expenses at a granular level, the notes to PhosAgro's POI financial statements identify categories of expenses within these income statement line items.  For example, in its Consolidated Statement of Profit or Loss and Other Comprehensive Income for 2019 (PhosAgro's 2019 Consolidated P&L Statement), PhosAgro deducted "Selling Expenses," "Administrative Expenses," and "Other Expenses" from Gross

---

[140] *See* Draft Results of Redetermination at 18.
[141] *Id.* at 19 (citing PhosAgro's IQR at Exhibit CVD-6).

Profit to calculate Profit Before Tax.[142]  The notes to PhosAgro's 2019 consolidated financial statements show that the "Other Expenses" category includes items such as "Social expenditures" and "Increase in provision for bad debt."[143]  Further, the notes to the consolidated statements show that the "Selling Expenses" and "Administrative Expenses" categories both include "Salaries and social contributions."[144]  Therefore, using Gross Profit would result in the inclusion of expenses such as "social expenditures," salaries and social contributions for sales and administrative personnel, and bad debt provisions in the numerator of the profit ratio calculation.  Despite lacking information on these expenses at a granular level, we find that including these expense categories is inconsistent with our aim, *i.e.*, calculating a profit ratio based on PhosAgro's costs for phosphate ore mining and beneficiation.[145]  These expense categories do not relate solely to PhosAgro's phosphate ore mining and beneficiation activities, as PhosAgro acknowledges.[146]

Additionally, PhosAgro's 2019 consolidated financial statements indicate an instance of double counting that would result from using Gross Profit instead of Profit Before Tax in the profit ratio calculation.  As explained in the Draft Results of Redetermination, PhosAgro provided evidence that JSC Apatit incurred certain environmental compliance expenses to produce phosphate rock during the POI.[147]  These environmental compliance expenses were not part of JSC Apatit's reported COP because JSC Apatit records the payments separately in its

---

[142] *See* PhosAgro's IQR at Exhibit CVD-6 (PJSC PhosAgro Consolidated Financial Statements for 2019, p. 7).
[143] *Id.* (PJSC PhosAgro Consolidated Financial Statements for 2019, p. 28).
[144] *Id.* (PJSC PhosAgro Consolidated Financial Statements for 2019, pp. 27-28).
[145] *See* Draft Results of Redetermination at 18-19.
[146] *See* PhosAgro's Draft Remand Comments at 7 (where PhosAgro states that "such additional expenses are allocated over the whole company, rather than specific segments of the company."  As explained below, however, PhosAgro cited no evidence to support an allocation of these expenses to specific activities, such as phosphate ore mining and beneficiation).
[147] *See* Draft Results of Redetermination at 19 (citing *First Remand Results* at 30).

accounting system.[148]  Given that adding these expenses to JSC Apatit's reported COP does not

result in double counting, we included these expenses in JSC Apatit's cost buildup for phosphate

rock.[149]  Conversely, using Gross Profit in the profit ratio calculation does result in double

counting certain extraction taxes in PhosAgro's phosphate rock cost buildup.  PhosAgro's 2019

Consolidated P&L Statement shows that the company deducted "Taxes, Other Than Income

Tax" from Gross Profit to calculate Profit Before Tax.[150]  The notes to PhosAgro's consolidated

financial statements elaborate that the "Taxes, Other Than Income Tax" category includes a

"Mineral extraction tax" of 954 million RUB.[151]  In the *First Remand Results*, we included total

2019 extraction taxes that PhosAgro paid to the GOR in the cost buildup for PhosAgro.[152]

Therefore, using Gross Profit in the profit ratio calculation would lead to double counting these

extraction taxes in PhosAgro's phosphate rock cost buildup.  Using Profit Before Tax, by

contrast, eliminates this double counting.

Further, the notes to PhosAgro's 2019 consolidated financial statements show evidence

that using Gross Profit would result in additional instances of double counting expenses in

PhosAgro's phosphate rock cost buildup.  As we have explained, PhosAgro's 2019 Consolidated

P&L Statement shows the company deducted "Selling Expenses" from Gross Profit to calculate

Profit Before Tax.[153]  The notes to PhosAgro's consolidated financial statements elaborate that

the "Selling Expenses" category includes expense categories such as "{f}reight, port and

stevedoring expenses," "Russian Railways infrastructure tariff and operators' fees," and

---

[148] *Id.*

[149] *Id.*

[150] *See* PhosAgro's IQR at Exhibit CVD-6 (PJSC PhosAgro Consolidated Financial Statements for 2019, p. 7).

[151] *Id.* (PJSC PhosAgro Consolidated Financial Statements for 2019, p. 28).

[152] *See* PhosAgro 1st Remand Draft Calculation Memorandum at 2, unchanged in PhosAgro 1st Remand Final Calculation Memorandum at 1-2 and Attachment 2.

[153] *See* PhosAgro's IQR at Exhibit CVD-6 (PJSC PhosAgro Consolidated Financial Statements for 2019, p. 7).

"{m}aterials and services."[154]  By comparison, PhosAgro's phosphate rock cost data in

PhosAgro's 2nd Remand SQR show [

] for phosphate rock.[155]

Additionally, in PhosAgro's 2019 Consolidated P&L Statement, PhosAgro deducted

"Administrative Expenses" from Gross Profit to calculate Profit Before Tax.[156]  By comparison,

PhosAgro's cost data in PhosAgro's 2nd Remand SQR show [

] for phosphate rock.[157]

        Therefore, the record demonstrates that by using Profit Before Tax instead of Gross

Profit, we:  (1) exclude expenses that relate to activities much broader than JSC Apatit's mining

and beneficiation of phosphate ore; (2) eliminate one clear instance of double counting in

PhosAgro's cost buildup for phosphate rock; and (3) remove the risk of other instances of double

counting that are evident based on PhosAgro's consolidated financial statements.  As explained

above in section III.A, "PhosAgro's Cost Reconciliation," JSC Apatit's reported POI cost of

sales of [                    ] for phosphate rock is the cost of sales [

].[158]  [                          ] cost of sales for phosphate rock [

].[159]  Using Profit Before

Tax in the benefit calculation, therefore, is consistent with our objective:  isolating PhosAgro's

---

[154] *Id.* (PJSC PhosAgro Consolidated Financial Statements for 2019, p. 28).
[155] *See* PhosAgro's 2nd Remand SQR at 2 and Exhibit REM-8.
[156] *See* PhosAgro's IQR at Exhibit CVD-6 (PJSC PhosAgro Consolidated Financial Statements for 2019, p. 7).
[157] *See* PhosAgro's 2nd Remand SQR at 2 and Exhibit REM-8.
[158] *Id.* at 2-4; *see also* JSC Apatit's Letter, "PhosAgro PJSC Affiliate Questionnaire Response," dated August 18, 2020, at Exhibit 1.
[159] *See* PhosAgro's 2nd Remand SQR at Exhibit REM-8.

costs for phosphate ore mining and beneficiation.[160]  By contrast, using a profit ratio that

includes expenses not related to phosphate ore mining and beneficiation *and* double-counted

expenses will skew the benefit calculation.  In the benefit calculation for the Provision of Mining

Rights for LTAR program, profit is a component of each respondent's phosphate rock cost

buildup, which we then compare to a benchmark price.[161]  Including expenses unrelated to

phosphate ore mining and beneficiation and double-counted expenses would skew the benefit

calculation by treating the value of the good conveyed via the GOR's mining rights as higher

than it otherwise would be without these expenses.[162]  Using Profit Before Tax instead of Gross

Profit eliminates these inaccuracies.  Accordingly, we find that using Profit Before Tax instead

of Gross Profit more accurately measures the benefit received by PhosAgro under this program.

In its comments, PhosAgro stated, "{n}evertheless, Commerce uses Profit Before Tax

from PhosAgro's consolidated financial statements, which, as Commerce must acknowledge,

include net financing income and net foreign exchange gains that also are not solely related to

phosphate ore production."[163]  PhosAgro, however, fails to provide any basis in support of its

claim – to use Gross Profit over Profit Before Tax.  Section 351.511(a)(2)(iii) of Commerce's

regulations does not prescribe a methodology for this calculation.  Our objective with the benefit

calculation for this program is to isolate PhosAgro's costs to mine and beneficiate phosphate ore

as best as possible.  Using Gross Profit, as suggested by PhosAgro, would include the company's

financing costs in the profit ratio calculation, as opposed to using a net amount for financing

---

[160] *See* Draft Results of Redetermination at 18; *see also* PhosAgro 1st Remand Draft Calculation Memorandum at 2 and Attachment 2, unchanged in PhosAgro 1st Remand Final Calculation Memorandum at Attachment 2.
[161] *See* PhosAgro 1st Remand Draft Calculation Memorandum at 2; *see also* PhosAgro 1st Remand Final Calculation Memorandum at 2.
[162] As explained in the *First Remand Results*, "we consider the calculation of a benefit under this program to be not on the value of the mining rights *per se*, but on the value of the underlying good conveyed via the mining rights." *See First Remand Results* at 27.
[163] *See* PhosAgro's Draft Remand Comments at 6.

income with Profit Before Tax.  PhosAgro fails to provide any evidence in support of its

argument – that including all of the company's financing costs in the profit ratio, as opposed to

net financing income, results in a more accurate subsidy rate calculation.  Indeed, PhosAgro has

provided no basis to show that Gross Profit is preferable to, or more accurate than, Profit Before

Tax; PhosAgro also provided no basis for any adjustment to our profit ratio calculation.

Ultimately, we must determine which measurement – Gross Profit or Profit Before Tax – is

consistent with our goal to calculate a profit ratio based on PhosAgro's costs for phosphate ore

mining and beneficiation.  Absent record evidence on specific expenses (*e.g.*, the information

cited by PhosAgro on JSC Apatit's environmental compliance expenses), we find no basis to

consider other measurements for profit other than Profit Before Tax vs. Gross Profit.[164]

> Further, PhosAgro stated,
>
> the Court should instruct Commerce to derive and apply expense ratios for the additional expenses such as Administrative Expenses (16,476,000,000 RUB) and Selling Expenses (38,121,000,000 RUB), in addition to the profit ratio, from PhosAgro PJSC's 2019 Consolidated Financial Statements.  These expense amounts can be calculated by dividing JSC Apatit's relevant expense figures by the Cost of Sales amount (136,224,000,000 RUB) from the same source.[165]

We do not find, however, that PhosAgro has provided a basis for consideration of any

adjustment to the profit ratio calculation.  PhosAgro fails to provide any basis on which we can

"derive and apply expense ratios for the additional expenses."[166]  Indeed, PhosAgro fails to

provide any record evidence to show that a certain portion of the "Selling Expenses,"

"Administrative Expenses," and "Other Expenses" in its 2019 consolidated financial statements

relate to its mining and beneficiation of phosphate ore.  Consequently, PhosAgro has failed to

present an argument (*i.e.*, specific adjustment or allocation methodology) that can be considered.

---

[164] *See* section III.C, "Use of Profit Before Tax in Profit Ratio Calculation for PhosAgro," *supra*.
[165] *See* PhosAgro's Draft Remand Comments at 8.
[166] *Id.*

In summary, we continue to find that using Profit Before Tax in the profit ratio calculation is appropriate in this instance.  We find that this method results in the most accurate measurement of the value of the underlying good conveyed via the GOR's mining rights.

## V.   FINAL RESULTS OF REDETERMINATION

Consistent with the *Second Remand Order*, we have:  (1) explained how JSC Apatit reconciled its phosphate rock cost information to its financial statements in a submission filed after the *First Remand Results*; (2) explained how a translated submission by EuroChem after the *First Remand Results* supported cost reconciliations that it previously provided; and (3) explained why the use of Profit Before Tax in the benefit calculation for the Provision of Mining Rights for LTAR program was appropriate.  Based on this analysis, we have made no changes to the subsidy rates calculated for EuroChem, PhosAgro, and all other producers or exporters in the *First Remand Results*.[167]  Should the CIT sustain these final results of redetermination, we intend to issue a *Timken*[168] notice with an amended final determination, because the rates for EuroChem, PhosAgro, and all other producers or exporters have been revised since the *Final Determination*.[169]

10/11/2023

X   _____

Signed by: LISA WANG

Lisa W. Wang
Assistant Secretary
  for Enforcement and Compliance

---

[167] *See First Remand Results* at 33.
[168] *See Timken Co. v. United States*, 893 F.2d 337 (Fed. Cir. 1990) (*Timken*).
[169] *See First Remand Results* at 33; *see also Final Determination*, 86 FR at 9480.