UNITED STATES COURT OF INTERNATIONAL TRADE
NEW YORK, NEW YORK

BEFORE:  THE HONORABLE JANE A. RESTANI, JUDGE

_____  )
                                          )
THE MOSAIC COMPANY,                       )
                                          )
                 Plaintiff,               )
                                          )
        and                               )
                                          )
PHOSAGRO PJSC, JSC APATIT,                )
                                          )
                 Consolidated Plaintiffs, )
                                          )
        and                               )
                                          )
INDUSTRIAL GROUP PHOSPHORITE LLC,         )
                                          )
        Consolidated Plaintiff and        )
        Consolidated Plaintiff-Intervenor,)
                                          )
        v.                                )        Consol. Court No. 21-00117
                                          )
UNITED STATES,                            )        **PUBLIC VERSION**
                                          )        Business Proprietary Information
                 Defendant,               )        removed from pages 10,11, and 14
                                          )
                                          )
THE MOSAIC COMPANY,                       )
                                          )
        Consolidated Defendant-Intervenor,)
                                          )
        and                               )
                                          )
PHOSAGRO PJSC, JSC APATIT,                )
INDUSTRIAL GROUP PHOSPHORITE LLC,         )
                                          )
                 Defendant-Intervenors.   )
_____  )

**CONSOLIDATED PLAINTIFFS PHOSAGRO PJSC AND JSC APATIT COMMENTS ON THE U.S. DEPARTMENT OF COMMERCE'S SECOND FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND**

H. Deen Kaplan
Jonathan T. Stoel
Jared R. Wessel
Maria Arboleda
Cayla D. Ebert

HOGAN LOVELLS US LLP
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004-1109
Phone: +1.202.637.6634
Fax: +1.202.637.5910

*Counsel to PhosAgro PJSC
and JSC Apatit*

November 13, 2023

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................................1

II.  COMMERCE'S PROFIT RATIO METHODOLOGY IN ITS MINING
     RIGHTS BENEFIT CALCULATIONS FOR JSC APATIT CONTINUES TO
     BE UNLAWFUL AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE.......6

     A.   Commerce Should Employ Gross Profit in JSC Apatit's Profit Ratio .........7

     B.   Alternatively, Commerce Should Include Additional Expenses in JSC
          Apatit's Profit Ratio......................................................................................11

III. COMMERCE CONTINUED TO RELY CORRECTLY ON JSC APATIT'S
     REPORTED COST OF PRODUCTION.................................................................13

IV.  CONCLUSION.........................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ceramark Technology, Inc. v. United States*,
    11 F.Supp.3d 1317 (Ct. Int'l Trade 2014) ................................................................ 6

*Gallant Ocean (Thailand) Co. v. United States*,
    602 F.3d 1319 (Fed. Cir. 2010) ............................................................................... 6

*Hyundai Heavy Industries Co., Ltd. v. United States*,
    485 F. Supp. 3d 1380 (Ct. Int'l Trade 2020) ........................................................ 14

*Mannesmannrohren-Werke AG v. United States*,
    23 CIT 826 (1999) ................................................................................................. 14

*Rhone Poulenc, Inc. v. United States*,
    899 F.2d 1185 (Fed. Cir. 1990) ............................................................................... 6

*The Mosaic Co. v. United States*,
    No. 21-116, slip op. 23-134 (Ct. Int'l. Trade Sept. 14, 2023) ......................... 9, 11

*Trent Tube Div., Crucible Materials Corp. v. Avesta Sandvik Tube AB*,
    975 F.2d 807 (Fed. Cir. 1992) .............................................................................. 14

*Zhejiang DunAn Hetian Metal Co., Ltd.*,
    652 F.3d 1333 (Fed. Cir. 2010) ............................................................................ 14

**CONSOLIDATED PLAINTIFFS PHOSAGRO PJSC AND JSC APATIT COMMENTS ON THE U.S. DEPARTMENT OF COMMERCE'S SECOND FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND**

Consolidated Plaintiffs PhosAgro PJSC and JSC Apatit (collectively, "JSC Apatit"), respectfully submit the following comments in opposition to the U.S. Department of Commerce's ("Commerce") October 11, 2023, *Final Results of Redetermination Pursuant to Court Remand* ("*Second Final Redetermination*"), ECF Nos. 128, 129. JSC Apatit respectfully requests that this Court find Commerce's *Second Final Redetermination* to be contrary to law and unsupported by substantial evidence for the reasons set forth below. JSC Apatit asks this Court to remand this matter once again to Commerce for further redetermination consistent with these points.

## I.    INTRODUCTION

The *Second Final Redetermination* concerns Commerce's final results of the countervailing duty ("CVD") investigation of phosphate fertilizers from Russia for the 2019 investigation period. *Phosphate Fertilizers from the Russian Federation*, 86 Fed. Reg. 9,479 (Dep't Commerce Feb. 16, 2021) (final affirmative CVD determination) ("Final Determination"), (P.R. 418) and accompanying Issues & Decision Memorandum (Feb. 8, 2021) ("*Final Issues and Decision Memo*"), (P.R. 405). 1/  The CVD period of investigation ("POI") was January 1, 2019 through December 31, 2019. JSC Apatit was a mandatory respondent in Commerce's CVD

---

1/       Documents on the agency record are referred to by the number provided in the U.S. Department of Commerce's administrative record index, filed with the Court on June 21, 2021, ECF No. 24. Confidential documents referred to with the rubric "C.R." followed by the relevant number; public documents and public versions of confidential documents are referred to by the rubric "P.R." followed by the relevant number. Documents on the agency record on first remand, filed with the Court on December 30, 2022, ECF No. 98, are referred to by the rubric "P.R.R." for public documents and public versions of confidential documents and "C.R.R." for confidential documents. Documents on the agency record on second remand, filed with the Court on October 25, 2023, ECF No. 130, are referred to by the rubric "P.2R.R." for public documents and public versions of confidential documents and "C.2R.R." for confidential documents.

investigation and was originally assigned a final countervailing duty margin of 9.19%. *Phosphate Fertilizers from the Kingdom of Morocco and the Russian Federation*, 86 Fed. Reg. 18,037 (Dep't Commerce Apr. 7, 2021) (CVD orders) ("*CVD Order*"), (P.R. 425). In response to this Court's first Remand Order, *The Mosaic Co. v. United States*, No. 21-117, slip op. 22-103 (Ct. Int'l Trade Sept. 2, 2022) ("*Remand Order*"), ECF Nos. 92, 93, on December 16, 2022, Commerce issued its *Final Results of Redetermination Pursuant to Court Remand* ("*First Final Redetermination*"), ECF No. 97. JSC Apatit was assigned a revised CVD margin of 14.30% in the *First Final Redetermination*. After additional litigation and oral argument, this Court issued an additional order and again remanded back to Commerce to correct its continuing errors. *The Mosaic Co. v. United States*, No. 21-117, slip op. 23-99 (Ct. Int'l Trade July 11, 2023) ("*Second Remand Order*"), ECF No. 124. Commerce has now issued its *Second Final Redetermination*, making no changes to its results and maintaining the CVD rates assigned in its *First Final Redetermination*.

A summary of the key issues before this Court with respect to JSC Apatit at this stage of the litigation is as follows:

**First,** this Court directed Commerce, for a second time, to correct its phosphate rock benefit calculations with respect to JSC Apatit's mining rights. The *Second Final Redetermination* again ignores this Court's mandate and fails to correct Commerce's material errors. At the core of this issue is Commerce's use of JSC Apatit's Profit Before Tax figure in its profit ratio, rather than using the company's Gross Profit figure, which more accurately reflects the commercial reality of a company's pricing process. In Commerce's *First Final Redetermination*, Commerce provided no justification for its selection of Profit Before Tax—importantly, Commerce's unexplained selection was a change after the agency originally employed JSC Apatit's Gross Profit figure in the *First Draft Results of Redetermination*. *Compare* Memorandum from William Horn

to The File, *Draft Remand Redetermination Calculations for PhosAgro PJSC*, Case No. C-821-825 (Slip Op. 22-103 Remand – Investigation) (Nov. 18, 2022), and accompanying Calculations Worksheet, (P.R.R. 12) *with* Memorandum from William Horn to The File, *Final Remand Redetermination Calculations for PhosAgro PJSC*, Case No. C-821-825 (Slip Op. 22-103 Remand – Investigation) (Dec. 16, 2022), and accompanying Calculations Worksheet, (P.R.R. 25, 26, C.R.R. 16, 17). The Court found that "Commerce has not adequately supported its decision to use Profit Before Tax when calculating the profit ratio." *Second Remand Order* at 19. Moreover, the Court found that "Commerce did not proffer why Profit Before Tax was used in previous proceedings or explain why it produced an accurate result now." *Id.*

JSC Apatit has already described in detail to this Court in its Comments on Commerce's Final Results of Redetermination Pursuant to Court Remand at the CIT why using Profit Before Tax leaves out important expenses and business considerations (*e.g.*, administrative and selling expenses) from the profit comparison portion of Commerce's calculations. *See* Consol. Pls. PhosAgro PJSC and JSC Apatit Comments on the U.S. Department of Commerce's Final Results of Redetermination Pursuant to Ct. Remand (Feb. 7, 2023), ECF Nos. 101, 102 ("Consol. Pls. Comments on Final Redetermination"). Put simply, employing Profit Before Tax results in an inaccurately calculated margin, contrary to Commerce's statutory mandate. This Court has already agreed with JSC Apatit on this critical point—its *Second Remand Order* held that "Commerce has not adequately supported its decision to use Profit Before Tax when calculating the profit ratio . . . . Commerce's explanation for its choice is insufficient for the court to review." *Second Remand Order* at 19. The Court thus remanded to Commerce to correct its error.

The *Second Final Redetermination* again fails to provide adequate justification, or correct its erroneous use of JSC Apatit's Profit Before Tax figure. Commerce's explanation still does not

provide a meaningful justification for its profit calculation methodology and does not comply with the Court's *First Remand Order*. Commerce attempts to justify its rejection of employing a Gross Profit figure by contending that there is no record evidence showing that certain financial items included in that figure relate solely to phosphate rock production. *Second Final Redetermination* at 19. But, notwithstanding its long-winded discussion, Commerce once again refuses to address commercial realities and fails to provide reasoning for its methodology supported by substantial evidence. In sum, Commerce's redetermination still contends that JSC Apatit determines its prices without considering certain overall selling and administrative costs incurred by the company. This is inaccurate and not supported by the record evidence. At the same time, Commerce uses the Profit Before Tax figure from PhosAgro PJSC's Consolidated Financial Statements, which inherently considers financial items outside of the production of phosphate rock. *See* Response from Crowell & Moring LLP to the U.S. Department of Commerce, *PhosAgro PJSC Initial Section III CVD Questionnaire Response*, Case No. C-821-825 (Investigation) (Sept. 24, 2020) at Ex. CVD-6, (P.R. 116, C.R 46). Commerce continues to fail to correct its error or adequately explain why its use of Profit Before Tax is reasonable and supported by record evidence. The Court must remand this issue back to Commerce again.

**Second**, the Court's *Second Remand Order* directed Commerce to address the entirety of Plaintiff's, the Mosaic Company ("Mosaic"), objections to Commerce's use of JSC Apatit reported cost of production. *Second Remand Order* at 15-17. In Commerce's *First Final Redetermination*, Commerce correctly employed JSC Apatit's reported cost of production data, which JSC Apatit thoroughly supported with reconciliation worksheets and additional documentation. *First Final Redetermination* at 21-24. Notwithstanding the substantial supporting documentation, Mosaic raised objections related to the cost reconciliation provided by JSC Apatit. *See* Pls. Comments on

Commerce's Remand Redetermination (Feb. 8, 2023), ECF Nos. 105, 106.  This Court's *Second Remand Order* instructed Commerce to "explain why reconciling to PhosAgro's statements was sufficient and respond to Mosaic's objection or seek further information from the respondent." *Second Remand Order* at 17.

Complying with the Court's mandate, Commerce issued a second supplemental questionnaire requesting an additional reconciliation for JSC Apatit's reported costs of production of phosphate rock.  Specifically, Commerce requested JSC Apatit to reconcile its costs to JSC Apatit's financial statements (in addition to the previously provided reconciliation to the PhosAgro PJSC's Consolidated Financial Statements).  Letter from the U.S. Department of Commerce to Hogan Lovells US LLP, *Remand of the Countervailing Duty Investigation of Phosphate Fertilizers from the Russian Federation: Supplemental Questionnaire for PhosAgro PJSC*, Case No. C-821-825 (Slip Op. 23-99 Remand – Investigation) (July 26, 2023), (P.2R.R. 1).  JSC Apatit timely and completely responded to Commerce's request.  Response from Hogan Lovells US LLP to the U.S. Department of Commerce, *Remand of the Countervailing Duty Investigation of Phosphate Fertilizers from the Russian Federation: Response to Second Supplemental Questionnaire*, Case No. C-821-825 (Slip Op. 23-99 Remand – Investigation) (Dep't Commerce Aug. 9, 2023) ("Second SQR Response"), (P.2R.R. 6, C.2R.R 3,4).  Subsequently, Commerce again correctly employs JSC Apatit's reported costs in its calculations, relying on this further reconciliation documentation and a thorough review of the additional evidence supplied by JSC Apatit.  *Second Final Redetermination* at 6-7.  Commerce, consistent with its agency discretion to assess the sufficiency of a party's responses to questionnaires, has provided a rational explanation for its reliance on JSC Apatit's cost data and has demonstrated that they are supported by substantial

evidence.  Accordingly, this Court should affirm Commerce's *Second Final Redetermination* in this regard.

## II.  COMMERCE'S PROFIT RATIO METHODOLOGY IN ITS MINING RIGHTS BENEFIT CALCULATIONS FOR JSC APATIT CONTINUES TO BE UNLAWFUL AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE

Commerce has an obligation to calculate subsidy margins "as accurately as possible." *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990).  Further, Commerce's determination must be supported by substantial evidence, which requires consideration of the record as a whole, including evidence contrary to its findings.  *Ceramark Technology, Inc. v. United States*, 11 F.Supp.3d 1317, 1321 (Ct. Int'l Trade 2014) (quoting *Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319, 1323 (Fed. Cir. 2010)).

The *Second Final Redetermination* fails to follow these principles and this Court's previous instructions.  This Court found that Commerce's *First Final Redetermination* failed to "adequately support" its calculation of JSC Apatit's profit ratio in its determination of a mining rights benefit and ordered the agency to correct its error.  *Second Remand Order* at 19.  Despite this clear mandate, the *Second Final Redetermination* once again fails to demonstrate that Commerce's selection of Profit Before Tax in JSC Apatit's profit ratio is lawful and supported by substantial evidence.  Commerce's decision must then again be reversed and remanded.

For the first time, in its *Second Final Redetermination* at 24, Commerce explained that it employs a profit ratio multiplier in its calculations to adjust the cost of production buildup to account for profit in order for it to be compared to the benchmark export price of phosphate rock (which inherently includes profit).  Yet, Commerce's approach does not meet this goal.  JSC Apatit respectfully submits that Commerce has (1) failed again to support its methodology to calculate this multiplier with record evidence, in contravention of this Court's instructions, and (2) failed to

6

calculate JSC Apatit's margin as accurately as possible by using Profit Before Tax in its profit ratio calculation. Despite more than ten pages of purported explanation in its *Second Final Redetermination*, the sum and substance of Commerce's decision is still the same—an unlawful decision that is not supported by record evidence.

### A. Commerce Should Employ Gross Profit in JSC Apatit's Profit Ratio

Commerce correctly acknowledges in the *Second Final Redetermination* that additional expenses and considerations included in Gross Profit are omitted from Profit Before Tax. These notable omissions include selling and administrative expenses, taxes other than income taxes, and other expenses. *Second Final Redetermination* at 17. Nonetheless, Commerce persists that using Gross Profit would be "inconsistent with the aim of the calculation methodology described in the *Final Determination* and the *First Final Redetermination*, which is to isolate costs for phosphate ore mining and beneficiation activities." *Second Final Redetermination* at 18. Commerce finds it is "more appropriate" to use a "more narrowly focused profit that excludes expenses unrelated to mining and beneficiation activities." *Id.* at 25. Commerce also wrongly posits that the expenses included in Gross Profit do not solely relate to phosphate rock production costs, and therefore cannot be considered in its mining rights calculation. *Id.* at 19. Commerce's claims are a red herring. As explained in detail in Consolidated Plaintiff's Comments on Final Redetermination, Commerce's omission of these key financial items when building a cost of production results in an inaccurate, and therefore unlawful, comparison to the benchmark price of phosphate rock and an overstated margin. *See* Consol. Pls. Comments on Final Redetermination

Commerce's lengthy explanation again entirely misses the point. JSC Apatit's pricing, and therefore its profit margin, is not set under "isolated" circumstances, or in a vacuum. Rather, its pricing must inherently be based on the precise items Commerce admits to wanting to exclude

from its calculation—overhead costs such as selling and administrative costs. In unreasonably refusing to change its methodology, Commerce cherry picks numbers from different levels of accounting in PhosAgro PJSC's consolidated financial statements. Commerce uses PhosAgro PJSC's Cost of Sales as reported in its 2019 Consolidated Statement of Profit or Loss, which is listed directly above its Gross Profits, as the denominator in its profit ratio calculation. Commerce uses Profit Before Tax rather than Gross Profit as the numerator in its profit ratio calculation. *See* Response from Crowell & Moring LLP to the U.S. Department of Commerce, *PhosAgro PJSC Initial Section III CVD Questionnaire Response*, Case No. C-821-825 (Investigation) (Sept. 24, 2020) at Ex. CVD-6 (P.R. 116, C.R 46). The result is that Commerce again (intentionally) ignores a net amount of more than 50 billion RUB worth of expenses that represent the difference between Gross Profit and Profit Before Tax. *Id.* If Commerce's goal is to calculate a profit ratio, or multiplier, to accurately compare JSC Apatit's cost of production to an export sales price benchmark, then Commerce must ensure that the profit ratio accurately reflects the difference between a sales price and the cost of production base. JSC Apatit's Gross Profit figure, which Commerce originally used in its *Draft First Redetermination* calculations, provides for a more accurate comparison as it includes the additional financial items that businesses factor into their sales price – selling expenses, administrative expenses, and other expenses. *See The Mosaic Co. v. United States*, Ct. No. 21-117, slip op. 22-103, Draft Results of Redetermination Pursuant to Court Remand (Dep't Commerce Nov. 18, 2022) ("Draft Remand") (P.R.R. 12). As such, employing Profit Before Tax, which does not include these things, does not result in an accurate comparison to the export sales price, nor an accurate benefit calculation. Commerce's profit ratio is therefore contrary to law and should not be upheld by this Court.

Commerce attempts to justify the exclusion of these key factors of a sales price by claiming they cannot be included as there is insufficient evidence to demonstrate they are related to the production of phosphate rock. 2/ *Second Final Redetermination* at 19. Commerce's unlawful act is particularly egregious in light of Commerce's decision to employ in its calculation the Profit Before Tax figure from PhosAgro's consolidated financial statements. This figure includes net financing income and net foreign exchange gains that also are not solely related to phosphate ore production. *Id.* Nowhere in Commerce's lengthy purported explanation of its refusal to abide by this Court's instructions does Commerce address whether this figure relates to phosphate rock production. Such a lopsided and illogical position by Commerce, excluding certain amounts while including others, is not supported by substantial evidence and does not provide an "adequate," rational explanation.

Commerce also attempts to obscure the facts by highlighting what it claims are certain instances of potential double-counting of expenses between the reported production costs for phosphate rock incurred by JSCA and selling and administrative expenses reported in PhosAgro's consolidated financial statements. *Second Final Redetermination* at 26. However, the appearance of expense amounts that are the same or similar in more than one location of an entity's income statement is not evidence of double-counting. Rather, it is completely normal and appropriate for a company to record the same or similar types of expenses in more than one location. Take, for instance, salaries and salary-related expenses. Salaries and salary-related expenses are incurred in connection with employees involved in different aspects of a company. Certain employees are

---

2/ JSC Apatit notes that the Court recently struck down Commerce's mining rights calculations in the parallel *Phosphate Fertilizers from Morocco* case on similar grounds. There, the Court found that Commerce's failure to include SG&A expenses in in its benefit calculations was unreasonable, and that requiring a company to segregate its SG&A costs for only phosphate rock was nonsensical. *The Mosaic Co. v. United States*, No. 21-116, slip op. 23-134 (Ct. Int'l. Trade Sept. 14, 2023), ECF No. 109.

involved in production-related activities, and the salaries and salary-related expenses of those workers would be recorded as part of cost of sales. Other employees are involved in selling activities or administrative activities. The salaries and salary-related expenses of those individuals would be reflected as selling expenses or administrative expenses, depending on the nature of the services provided by the employee. Again, it is completely normal and appropriate for a company to record the same or similar types of expenses in more than one location.

In particular, Commerce points to the apparent overlap in movement expenses that are included in "Selling Expenses" ("{f}reight, port and stevedoring expenses," "Russian Railways infrastructure tariff and operators' fees," and "{m}aterials and services.") with movement expenses that are included in the reported costs for phosphate rock ([

]). *Second Final Redetermination* at 27-28. However, this is not at all remarkable. Movement expenses pertaining to production activities are included with production costs, while movement expenses pertaining to sales activities are included as selling expenses. This does not mean that movement expenses would be double-counted by including selling expenses in addition to the reported phosphate rock production costs. In fact, information in JSC Apatit's supplemental questionnaire response demonstrates that the above-referenced movement expenses reported as part of the cost of phosphate rock were consolidated into PhosAgro's cost of sales and were not reported as part of PhosAgro's selling expenses. *See* Second SQR Response at Exhibit REM-8 (P.2R.R. 6, C.2R.R 3,4). Thus, no double-counting in Commerce's phosphate rock calculations would occur by the inclusion of selling expenses that include sales-related movement expenses.

Similarly, in its *Second Final Redetermination*, Commerce makes much of what it perceives to be overlap between "Administrative Expenses" appearing on PhosAgro's 2019

Consolidated P&L Statement and line items such as [

] in the reported cost of sales for phosphate rock. *Second Final Redetermination* at 28. This is also a non-issue. It is normal for a company to have certain expense items such as these that are recorded as part of cost and not part of administrative expenses. Again, JSC Apatit's supplemental questionnaire response makes clear that that these expenses identified by Commerce and reported as part of the cost of phosphate rock were consolidated into PhosAgro's cost of sales and were not reported as part of PhosAgro's administrative expenses. *See* Second SQR Response at Exhibit REM-8 (P.2R.R. 6, C.2R.R 3,4). As such, there is no risk of double-counting as commerce alleges in using JSC Apatit's Gross Profit figure.

**B.      Alternatively, Commerce Should Include Additional Expenses in JSC Apatit's Profit Ratio**

If Commerce continues to utilize "Profit Before Tax" instead of "Gross Profit" in its calculations, the agency should make certain adjustments in order to derive a more appropriate adjusted cost of production amount for comparison to the export sales price benchmark. JSC Apatit has previously explained, and submits here again, that Commerce should additionally use expense ratio multipliers for the required additional expenses (*e.g.*, Administrative Expenses and Selling Expenses) in deriving the company's adjusted cost of production amount. 3/

Commerce claims that JSC Apatit failed to provide "any basis on which {Commerce} can 'derive and apply expense ratios for the additional expenses.'" *Second Final Redetermination* at 30. This is wrong. JSC Apatit explained in the very excerpt of its Comments on the Second Draft Remand quoted by Commerce that these ratios can be derived by dividing JSC Apatit's

---

3/      JSC Apatit again draws the Court's attention to the parallel *Phosphate Fertilizers from Morocco* case in which the Court recently struck down Commerce's mining rights calculations due to Commerce's failure to include SG&A expenses in in its benefit calculations. *The Mosaic Co. v. United States*, No. 21-116, slip op. 23-134 (Ct. Int'l. Trade Sept. 14, 2023), ECF No. 109.

relevant expense figures by the Cost of Sales amount. *Id.* Letter from Hogan Lovells US LLP to the U.S. Dep't Commerce from, *Phosphate Fertilizers from Russia: PhosAgro PJSC's Comments on Commerce's Second Draft Results of Redetermination*, Case No. C-821-825 (Investigation – Remand) (Sept. 26, 2023) at 8 (P.2R.R 13). The derivation and application of expense ratios for the additional expense amounts is no different conceptually than the derivation and application of a profit ratio by Commerce, and Commerce's source of feigned confusion on this point is astounding. The inclusion of the additional expenses are necessary in order to ensure a reasonable comparison of the alleged benefit provided to JSC Apatit with Commerce's constructed benchmark.

As explained previously, Commerce's export sales price benchmark reflects sales prices of phosphate rock exports from certain countries selected by Petitioners. In order to price their sales, exporters of phosphate rock must consider all of their expenses incurred, including Administrative Expenses and Selling Expenses. As such, any reasonable comparison price must also take these expenses into account. Accordingly, the Court should instruct Commerce to derive and apply expense ratios for the additional expenses such as Administrative Expenses and Selling Expenses in addition to the profit ratio, from PhosAgro PJSC's 2019 Consolidated Financial Statements. These expense amounts can be calculated by dividing JSC Apatit's relevant expense figures by the Cost of Sales amount (136,224,000,000 RUB) from the same source. *See Response from Crowell & Moring LLP to the U.S. Department of Commerce, PhosAgro PJSC Initial Section III CVD Questionnaire Response*, Case No. C-821-825 (Investigation) (Sept. 24, 2020) at Ex. CVD-6. (P.R. 116; C.R. 46). Again, this is the same basic approach that Commerce applied with respect to profit (*i.e.*, dividing the selected profit figure by the Cost of Sales amount).

These additional expense ratios must be calculated and applied in determining the adjusted cost of production amount, in addition to JSC Apatit's profit ratio, in order to calculate most accurately JSC Apatit's alleged benefit margin. Commerce has failed to support its use of Profit Before Tax, instead of Gross Profit, or just Profit Before Tax and not additional expenses, with sound reasoning and substantial evidence. For these reasons, in the alternative this Court should remand this important issue back to Commerce and should instruct the agency to correct its errors.

## III. COMMERCE CONTINUED TO RELY CORRECTLY ON JSC APATIT'S REPORTED COST OF PRODUCTION

This Court directed Commerce to explain more fully why JSC Apatit's reported costs were sufficient for its benefit calculations, or to seek additional information from JSC Apatit. *Second Remand Order* at 16-17. This Court previously held that Commerce had not adequately responded to all of Mosaic's objections, specifically that JSC Apatit did not reconcile its costs to JSC Apatit's financial statements (in additional to its reconciliation to PhosAgro PJSC Consolidated Financial Statements). *Id.* at 16. The *Second Final Redetermination* (1) describes the additional evidence requested and reviewed by Commerce to assess the reliability and validity of JSC Apatit's reported costs, and (2) adequately explains Commerce's reasoning for its continued reliance on JSC Apatit's costs.

On July 26, 2023, Commerce issued a supplemental questionnaire to JSC Apatit and requested a reconciliation of its reported costs to its financial statements. Letter from the U.S. Department of Commerce to Hogan Lovells US LLP, *Remand of the Countervailing Duty Investigation of Phosphate Fertilizers from the Russian Federation: Supplemental Questionnaire for PhosAgro PJSC*, Case No. C-821-825 (Slip Op. 23-99 Remand – Investigation) (July 26, 2023), (P.2R.R. 1). Commerce finds that "JSC Apatit provided this reconciliation" and also "provided records from its accounting system to support this figure and other components of its POI cost of

sales." *Second Final Redetermination* at 6. Consistent with this Court's instructions, Commerce explicitly reviews the reconciliation and supporting documentation to explain their sufficiency for purposes of its calculations:

> First, JSC Apatit tied its total POI cost of sales of **[ ]** from its accounting system to **[ ]** its 2019 financial statements. Next, JSC Apatit provided a breakdown of the individual items that compose its POI cost of sales, including **[ ]** for phosphate rock. The **[ ]** figure ties directly to the POI costs for phosphate rock that JSC Apatit originally reported in JSC Apatit's 1st Remand SQR.

*Second Final Redetermination* at 6 (internal citations omitted). Accordingly, Commerce again determines that there is "no record evidence that leads {Commerce} to doubt the reliability or veracity of JSC Apatit's reported costs incurred to mine and process phosphate ore into beneficiated phosphate rock." *Second Final Redetermination* at 7.

This Court has already acknowledged the "considerable discretion {afforded to Commerce} in deciding whether a party has sufficiently replied to an information request." *Second Remand Order* at 15 (quoting *Mannesmannrohren-Werke AG v. United States*, 23 CIT 826, 849 (1999). Moreover, this Court's role is not to reweigh the reliability and sufficiency of JSC Apatit's Cost Data. *Trent Tube Div., Crucible Materials Corp. v. Avesta Sandvik Tube AB*, 975 F.2d 807, 815 (Fed. Cir. 1992); *see also Hyundai Heavy Industries Co., Ltd. v. United States*, 485 F. Supp. 3d 1380 (Ct. Int'l Trade 2020) (upholding Commerce's use of certain data after finding the Court considered the arguments presented and provided a rational explanation for its determination). Rather, this Court is to assesses whether "a reasonable mind" would have accepted JSC Apatit's even more than fulsome responses, including its detailed additional cost reconciliation, as "adequate" to support its legal conclusions. *Zhejiang DunAn Hetian Metal Co., Ltd.*, 652 F.3d 1333, 1340 (Fed. Cir. 2010).

For the foregoing reasons, the *Second Final Redetermination* provides a rational explanation for its reliance on JSC Apatit's cost data and demonstrated that the data are supported by substantial evidence. JSC Apatit's two separate reconciliations, along with Commerce's direct responses to Mosaic's concerns, are adequate to support its findings and address the concerns espoused in this Court's *First Remand Order*. The *Second Final Redetermination* should be affirmed in this regard.

## IV. CONCLUSION

For the foregoing reasons, Commerce's *Second Final Redetermination* is, in part, contrary to law and unsupported by substantial evidence. This Court should remand to Commerce to revise its *Second Final Redetermination* to calculate JSC Apatit's profit ratio in its mining rights benefit calculations to be supported by substantial evidence and more accurately reflect JSC Apatit's cost of production. Specifically, Commerce should employ PhosAgro PJSC's Gross Profit figure in its profit ratio calculation for its mining rights benefit calculations. On the other hand, with regard to Commerce's reliance on JSC Apatit's reported costs and additional reconciliation, Commerce's *Second Final Redetermination* is supported by substantial evidence and should be upheld.

Respectfully submitted,

/s/ Jonathan T. Stoel
H. Deen Kaplan
Jonathan T. Stoel
Jared Wessel
Maria A. Arboleda
Cayla D. Ebert

HOGAN LOVELLS US LLP
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004-1109
Phone: +1.202.637.6634
Fax: +1.202.637.5910
E-mail: jonathan.stoel@hoganlovells.com

*Counsel to JSC Apatit and PhosAgro PJSC*

Dated: November 13, 2023

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel at Hogan Lovells US LLP hereby certify that the foregoing comments comply with the word-count limitation described in the Standard Chambers Procedures. These comments contain 4,298 words according to the word-count function of the word-processing software used to prepare the comments.

Respectfully submitted,

/s/ Jonathan T. Stoel
H. Deen Kaplan
Jonathan T. Stoel
Jared Wessel
Maria A. Arboleda
Cayla D. Ebert

HOGAN LOVELLS US LLP
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004-1109
Phone: +1.202.637.5600
Fax: +1.202.637.5910
E-mail: jonathan.stoel@hoganlovells.com

*Counsel to JSC Apatit and PhosAgro PJSC*

November 13, 2023