**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE JANE A. RESTANI, SENIOR JUDGE**

| | |
|---|---|
| THE MOSAIC COMPANY,<br><br>  Plaintiff,<br><br>and<br><br>PHOSAGRO PJSC, JSC APATIT,<br><br>  Consolidated Plaintiffs,<br><br>and<br><br>INDUSTRIAL GROUP PHOSPHORITE, LLC,<br><br>  Consolidated Plaintiff and<br>  Consolidated Plaintiff-Intervenor,<br><br>  v.<br><br>UNITED STATES,<br><br>  Defendant,<br><br>and<br><br>THE MOSAIC COMPANY,<br><br>  Consolidated Defendant-Intervenor<br><br>and<br><br>PHOSAGRO PJSC, JSC APATIT, INDUSTRIAL GROUP PHOSPHORITE, LLC,<br><br>  Defendant-Intervenors. | Consol. Court No. 21-00117<br><br><u>NON-CONFIDENTIAL VERSION</u><br><br>Business Proprietary Information Removed from Pages 2, 4-5, 7 |

**<u>THE MOSAIC COMPANY'S REPLY COMMENTS ON COMMERCE'S SECOND REMAND REDETERMINATION</u>**

                                          David J. Ross
                                          Stephanie E. Hartmann
                                          Alexandra S. Maurer
                                          Natan P.L. Tubman
                                          WILMER CUTLER PICKERING HALE AND
                                          DORR LLP
                                          2100 Pennsylvania Avenue, NW
                                          Washington, DC 20037
                                          Telephone: (202) 663-6000
                                          Facsimile: (202) 663-6363

Dated: December 13, 2023                    *Counsel for The Mosaic Company*

**TABLE OF CONTENTS**

I.　　INTRODUCTION ................................................................................................. 1

II.　　COMMERCE'S DECISION TO CONTINUE USING PROFIT BEFORE TAX IN THE PROFIT RATIO IS REASONABLE, SUPPORTED BY SUBSTANTIAL EVIDENCE, AND IN ACCORDANCE WITH LAW .......................... 2

III.　　COMMERCE PROPERLY REJECTED JSC APATIT'S ALTERNATIVE PROPOSAL TO APPLY AN ADDITIONAL EXPENSES RATIO ................................. 6

IV.　　CONCLUSION ....................................................................................................... 8

# **TABLE OF AUTHORITIES**

Page(s)

**Regulations**

19 C.F.R. § 351.511(a)(2)(iii) ................................................................................................. 2

**Cases**

*Burlington Truck Lines, Inc. v. United States*,
    371 U.S. 156 (1962) ................................................................................................. 6

*Hyundai Heavy Indus., Co. v. United States*,
    332 F. Supp. 3d 1331 (CIT 2018) ........................................................................ 4, 7

**Docketed Cases**

*The Mosaic Company v. United States*, Consol. Ct. No. 21-00117, Slip Op. 23-99
    (CIT July 11, 2023) ................................................................................................. 1

**Administrative Materials**

*Countervailing Duty Investigation of Certain Cold-Rolled Steel Flat Products
    from the Russian Federation: Final Affirmative Countervailing Duty
    Determination and Final Negative Critical Circumstances Determination*,
    81 Fed. Reg. 49,935 (Dep't Commerce July 29, 2016), and accompanying
    Issues and Decision Memorandum ........................................................................ 6

*Phosphate Fertilizers From the Kingdom of Morocco: Final Affirmative
    Countervailing Duty Determination*, 86 Fed. Reg. 9,482 (Dep't Commerce
    Feb. 16, 2021), and accompanying Issues and Decision Memorandum ............... 6

*Phosphate Fertilizers From the Russian Federation: Final Results of
    Countervailing Duty Administrative Review; 2020-2021*, 88 Fed. Reg.
    76,182 (Dep't Commerce Nov. 6, 2023), and accompanying Issues and
    Decision Memorandum ........................................................................................... 6

I.      **INTRODUCTION**

Plaintiff and Consolidated Defendant-Intervenor The Mosaic Company ("Mosaic") respectfully submits these rebuttal comments in response to the comments filed by Consolidated Plaintiffs PhosAgro PJSC and JSC Apatit (collectively, "JSC Apatit") in opposition to certain aspects of the U.S. Department of Commerce's ("Commerce") Second Final Results of Redetermination Pursuant to Court Remand.  *See* Consol. Pls.' Comments on Commerce's Second Final Results of Redetermination Pursuant to Court Remand, ECF No. 133 ("JSC Apatit Cmts. Second Remand"); Conf. Final Results of Redetermination Pursuant to Ct. Remand (Oct. 11, 2023), Second C.R.R. 10, Second P.R.R. 14, ECF No. 128-1 ("Second Remand Determination"); *The Mosaic Company v. United States*, Consol. Ct. No. 21-00117, Slip Op. 23-99 (CIT July 11, 2023) ("*Second Remand Order*").

JSC Apatit asks this Court to find that Commerce's Second Remand Determination is contrary to law and unsupported by substantial evidence because Commerce continued to use PhosAgro PJSC's Profit Before Tax, instead of Gross Profit, as the numerator of the profit ratio in calculating the benefit of JSC Apatit's phosphate mining rights, and alternatively declining to add an amount for Administrative Expenses and Selling Expenses.  JSC Apatit Cmts. Second Remand, ECF No. 133.  For the reasons discussed below, the Court should reject JSC Apatit's arguments and affirm Commerce's decision to continue using Profit Before Tax as the numerator of JSC Apatit's profit ratio, and to decline to add an amount for Administrative Expenses and Selling ExpensesC, as reasonable, supported by substantial evidence and otherwise in accordance with law.

**Consol. Court No. 21-00117** NON-CONFIDENTIAL VERSION

BUSINESS PROPRIETARY
INFORMATION REMOVED

II. **COMMERCE'S DECISION TO CONTINUE USING PROFIT BEFORE TAX IN THE PROFIT RATIO IS REASONABLE, SUPPORTED BY SUBSTANTIAL EVIDENCE, AND IN ACCORDANCE WITH LAW**

The Court's second remand opinion instructed Commerce to explain why it used Profit Before Tax instead of Gross Profit as the numerator of JSC Apatit's profit ratio for purposes of calculating the benefit of the Phosphate Mining Rights for Less Than Adequate Remuneration ("LTAR") program. *Second Remand Order* at 19-20. The Court found that Commerce's previous explanation – that using Profit Before Tax was consistent with its past practice in *Phosphate Fertilizers From Morocco* and *Cold-Rolled Steel From the Russian Federation* – was insufficient. *Id.* at 19.

Following the Court's instruction, Commerce provided a detailed explanation in the Second Remand Determination for why it is appropriate to use Profit Before Tax instead of Gross Profit as the numerator of the profit ratio applied to JSC Apatit's phosphate rock cost build-up. The ultimate purpose of constructing a cost build-up is to measure, as accurately as possible, the benefit that the respondents received from their subsidized phosphate mining rights. Because there are no market-determined prices for phosphate mining rights and no global prices for phosphate mining rights, Commerce resorted to constructing a tier-three benchmark to measure the value of the phosphate mining rights that the respondents received from the Government of Russia ("GOR"), **[         ]**, pursuant to 19 C.F.R. § 351.511(a)(2)(iii). *See* PhosAgro Remand Supp. QR, Ex. REM-2(1), C.R.R. No. 2, P.R.R. No. 9 ("PhosAgro Remand Supp. QR") (showing **[

            ]**).

PhosAgro is not challenging the lawfulness of Commerce's decision to resort to a tier-three benchmark under 19 C.F.R. § 351.511(a)(2)(iii) to measure the extent to which the

respondents' mining rights were provided for less than adequate remuneration, or Commerce's decision to assess whether the GOR's prices for phosphate mining licenses are "consistent with market principles" by constructing a cost build-up for the respondents' phosphate mining and beneficiation operations and comparing that cost build-up to world market prices for beneficiated phosphate rock. *See* Conf. Final Results of Redetermination Pursuant to Ct. Remand (Dec. 16, 2022), C.R.R. 14, P.R.R. 23, ECF No. 96-1 ("First Remand Determination") at 24-25. Rather, JSC Apatit argues that Commerce's alleged omission of certain expenses "when building a cost of production" resulted in "an inaccurate, and therefore unlawful, comparison to the benchmark price of phosphate rock and an overstated margin." JSC Apatit Cmts. Second Remand at 7. However, this is not an antidumping proceeding, and Commerce is not calculating "cost of production" within the meaning of 19 U.S.C. § 1677b(b)(2). There is no requirement in the countervailing duty law for Commerce to include such expenses in a tier-three calculation cost buildup.

As Commerce explained in the Second Remand Determination, the goal of constructing a tier-three cost build-up is to isolate the respondent's costs for phosphate mining and beneficiation that would be reflected in the price of beneficiated phosphate rock. Second Remand Determination at 24-25. Here, Commerce reasonably found that Profit Before Tax is "a more narrowly focused profit figure" than Gross Profit, because it "excludes expenses unrelated to mining and beneficiation activities." *Id.* The difference between the PhosAgro Group's Gross Profit and its Profit Before Tax is approximately RUB 50 billion in expenses categorized as "Selling Expenses," "Administrative Expenses," and "Other Expenses." *See* PhosAgro IQR, Exhibit CVD-6, C.R. No. 46, P.R. No. 116 ("PhosAgro IQR"). Commerce explained in the Second Remand Determination that there is no information on the record regarding what costs

are included in these expense items, or whether those costs relate solely to phosphate mining and rock beneficiation. *See* Second Remand Determination at 25. JSC Apatit has failed to put forward any evidence showing that costs reported in the PhosAgro Group's consolidated financial results as Selling Expenses, Administrative Expenses, and Other Expenses relate to phosphate mining and rock beneficiation. JSC Apatit has thus failed to meet its burden of showing that these costs must be accounted for in some way in the phosphate rock cost build-up. *See Hyundai Heavy Indus., Co. v. United States*, 332 F. Supp. 3d 1331, 1342 (CIT 2018) ("The burden to build the record in each segment lies with the respondent.").

JSC Apatit argues that Commerce "wrongly posits" that the additional expenses included in Gross Profit "do not solely relate to phosphate rock production costs, and therefore cannot be considered in its mining rights calculation" and asserts that "Commerce's claims are a red herring." JSC Apatit Second Remand Cmts. at 7. To the contrary, Commerce is correct that there is no record evidence demonstrating that the Selling Expenses, Administrative Expenses, and Other Expenses recorded in the PhosAgro Group's consolidated 2019 financial statements relate to JSC Apatit's phosphate mining and beneficiation operations. *See* Second Remand Determination at 18-19. The notes to PhosAgro's 2019 financial statement show that these categories include cost items such as "salaries and social contributions"; "professional services"; depreciation; freight; and "materials and services." *See* PhosAgro's IQR, Exhibit CVD-6 (Financial Statement for 2019 at 27-28). **[**


**]**. *See* PhosAgro Remand Supp. QR, Exhibit REM-3(2). Thus, the record supports Commerce's concern that the use of PhosAgro's Gross Profit would result in the

BUSINESS PROPRIETARY
INFORMATION REMOVED

Consol. Court No. 21-00117         NON-CONFIDENTIAL VERSION

inclusion of costs that do not relate to phosphate rock mining and beneficiation, or the double-counting of these types of costs. *See* Second Remand Determination at 27-29.

JSC Apatit claims that "Commerce's lengthy explanation {} entirely misses the point" because Selling Expenses, Administrative Expenses, and Other Expenses are "financial items that businesses factor into their sales price" and PhosAgro's "pricing must inherently be based on" these items. JSC Apatit Second Remand Cmts. at 7. As an initial matter, PhosAgro's pricing is not directly relevant to Commerce's calculation of a cost build-up for phosphate rock, because this is not an antidumping proceeding. Commerce is measuring the benefit that JSC Apatit receives from its mining rights subsidies, not determining whether PhosAgro is selling below cost. Commerce properly limited its calculation of the cost build-up to the costs of phosphate mining and rock beneficiation that JSC Apatit reported **[**

**]**, and used the more narrowly focused profit figure, Profit Before Tax, that excludes costs unrelated to phosphate mining and beneficiation. *See* Second Remand Determination at 25, 28.

But even if its pricing was relevant, JSC Apatit's arguments are nothing more than bald assertions, with no factual evidence or legal authority cited in support. Further, as already explained, JSC Apatit's phosphate rock cost build-up **[**

**]**. *See* PhosAgro Remand Supp. QR, Exhibits REM-3(2), 8(2). Commerce provided a reasoned explanation for why it would be contrary to its goal of isolating the costs of phosphate mining and rock beneficiation to use a Gross Profit numerator that includes unrelated costs. *See* Second Remand Determination at 26. Commerce's straightforward explanation is reasonable, supported by the record evidence, and clearly articulates a "rational connection between the facts found and the choice made," and

should therefore be affirmed by the Court. *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).

### III. COMMERCE PROPERLY REJECTED JSC APATIT'S ALTERNATIVE PROPOSAL TO APPLY AN ADDITIONAL EXPENSES RATIO

Commerce also properly rejected PhosAgro's alternative argument that, if Commerce did not use Gross Profit as the numerator of PhosAgro's profit ratio, it should derive entirely new ratios for Selling Expenses and Administrative Expenses to apply to the phosphate rock cost build-up. *See* Second Remand Determination at 29-30. JSC Apatit has failed to provide any legal or factual basis that would warrant such a departure from Commerce's prior practice in this proceeding and in other cases. *See Phosphate Fertilizers From the Russian Federation: Final Results of Countervailing Duty Administrative Review; 2020-2021*, 88 Fed. Reg. 76,182 (Dep't Commerce Nov. 6, 2023), and accompanying Issues and Decision Memorandum at 22-23; *Phosphate Fertilizers From the Kingdom of Morocco: Final Affirmative Countervailing Duty Determination*, 86 Fed. Reg. 9,482 (Dep't Commerce Feb. 16, 2021), and accompanying Issues and Decision Memorandum at 27; *Countervailing Duty Investigation of Certain Cold-Rolled Steel Flat Products from the Russian Federation: Final Affirmative Countervailing Duty Determination and Final Negative Critical Circumstances Determination*, 81 Fed. Reg. 49,935 (Dep't Commerce July 29, 2016), and accompanying Issues and Decision Memorandum at 31, 100, 102-03.

JSC Apatit claims, without any citation, that "exporters of phosphate rock must consider all of their expenses incurred, including Administrative Expenses and Selling Expenses," and "any reasonable comparison price must also take these expenses into account." JSC Apatit Cmts. Second Remand at 12. However, JSC Apatit's argument once again ignores that its

phosphate rock cost build-up **[**

**]**.  *See* PhosAgro Remand Supp. QR, Exhibits REM-3(2), 8(2).

Moreover, Commerce correctly found that PhosAgro failed to provide evidence showing that *any* amount of the "Selling Expenses," "Administrative Expenses," and "Other Expenses" recorded **[        ]** in the PhosAgro Group's consolidated 2019 financial statements relate to JSC Apatit's phosphate mining and beneficiation operations.  *See* Second Remand Determination at 30.  There is also no record evidence showing that the PhosAgro Group incurs these costs in proportion to its direct costs, as reflected in total Cost of Sales.  Commerce thus reasonably rejected JSC Apatit's suggestion to add additional amounts for these costs based on the ratio of the PhosAgro Group's Selling Expenses and Administrative Expenses to Cost of Sales.  *See id.*

As previously noted, this is not an antidumping proceeding, and Commerce is not calculating "cost of production" within the meaning of 19 U.S.C. § 1677b(b)(2).  The only legal authority that JSC Apatit invokes is Commerce's obligation to calculate subsidy rates "as accurately as possible," but JSC Apatit has failed to demonstrate that the costs in question relate to phosphate mining or beneficiation or the pricing of phosphate rock.  Since JSC Apatit is the company in possession of the relevant information, and since the inclusion of extraneous costs in the cost build-up is to JSC Apatit's advantage, the burden is on JSC Apatit to make this demonstration.  *See Hyundai Heavy Indus.*, 332 F. Supp. 3d at 1342.  As Commerce properly found, it failed to do so.  Further, contrary to JSC Apatit's arguments, adding an arbitrary amount for selling and administrative costs with no demonstrated connection to phosphate mining and beneficiation or rock pricing to the tier-three cost build-up would make the subsidy calculation *less* accurate, contrary to Commerce's obligations under the statute.

Accordingly, Commerce's decisions to continue using PhosAgro's Profit Before Tax as the numerator of the profit ratio and to not derive and apply administrative and selling ratios to the cost build-up are supported by substantial evidence and in accordance with law.

## IV. CONCLUSION

For the reasons discussed above, Mosaic respectfully requests that the Court uphold Commerce's Second Remand Determination with respect to the calculation of JSC Apatit's profit ratio for measuring benefits under the Phosphate Mining Rights for LTAR program.

Respectfully submitted,

/s/ David J. Ross
David J. Ross
Stephanie E. Hartmann
Alexandra S. Maurer
Natan P.L. Tubman
Wilmer Cutler Pickering Hale and Dorr LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
Email: david.ross@wilmerhale.com

*Counsel for The Mosaic Company*

Dated: December 13, 2023

# CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this submission complies with the word limitation requirement. The word count for this submission, as computed by Wilmer Cutler Pickering Hale and Dorr LLP's word processing system, is 2,111 words.

/s/ David J. Ross
(Signature of Attorney)

David J. Ross
(Name of Attorney)

The Mosaic Company
(Representative Of)

December 13, 2023
(Date)