Non-Confidential Version

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JANE A. RESTANI, JUDGE

―――――――――――――――――――――――――――――

| | | |
|---|---|---|
| THE MOSAIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PHOSAGRO PJSC, JSC APATIT, | ) | |
| | ) | |
| Consolidated Plaintiffs, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| INDUSTRIAL GROUP PHOSPHORITE LLC, | ) | |
| | ) | |
| Consolidated Plaintiffs and | ) | |
| Consolidated Plaintiffs-Intervenor, | ) | |
| | ) | |
| v. | ) | Consol. Court No. 21-00117 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| THE MOSAIC COMPANY, | ) | |
| | ) | |
| Consolidated Defendant, | ) | |
| and | ) | |
| | ) | |
| PHOSAGRO PJSC, JSC APATIT, | ) | |
| INDUSTRIAL GROUP PHOSPHORITE LLC, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

―――――――――――――――――――――――――――――

**<u>ORDER</u>**

Upon consideration of the Department of Commerce's final results of redetermination

pursuant to remand, the comments thereto, and all other pertinent papers, it is hereby

**Non-Confidential Version**

ORDERED that the remand results are sustained, and further

ORDERED that final judgment is entered in favor of the United States.


Dated: _____, 2023      _____
      New York, NY                          JANE A. RESTANI, JUDGE

**Non-Confidential Version**

## <u>TABLE OF CONTENTS</u>

**PAGE**

BACKGROUND ................................................................................................ 2

ARGUMENT .................................................................................................... 7

I.    Standard Of Review ........................................................................ 7

II.    Commerce Properly Relied On PhosAgro's And EuroChem's Cost Information To Calculate A Benefit For The Provision Of Mining Rights For Less Than Adequate Remuneration ..................................... 7

      A.    PhosAgro's Cost Reconciliation ............................................ 8

      B.    EuroChem's Cost Of Production Records ............................. 11

III.    Commerce's Properly Determined That Profit Before Tax Yielded A More Accurate Calculation ............................................................ 13

CONCLUSION ............................................................................................... 20

Non-Confidential Version

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                  PAGE(S)

*Amanda Foods (Vietnam) Ltd. v. United States*,
    774 F. Supp. 2d 1286 (Ct. Int'l Trade 2011) ................................. 9

*Bethlehem Steel Corp. v. United States*,
    223 F. Supp. 2d 1372 (Ct. Int'l Trade 2002) ................................. 9

*Burlington Truck Lines v. United States*,
    371 U.S. 156 (1962) ................................................................. 16

*Canadian Solar Inc. v. United States*,
    537 F. Supp. 3d 1380 (Ct. Int'l Trade 2021) ............................... 15

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ................................................................... 16

*Nan Ya Plastics Corp. v. United States*,
    810 F.3d 1333 (Fed. Cir. 2016) ................................................ 15

*QVD Food Co., Ltd. v. United States*,
    658 F.3d 1318 (Fed. Cir. 2011) ................................................ 15

*SolarWorld Ams., Inc. v. United States*,
    910 F.3d 1216 (Fed. Cir. 2018) ................................................ 15

*The Mosaic Company v. United States*,
    589 F. Supp. 3d 1298 (Ct. Int'l Trade 2022) ............................... 5

*Zenith Elecs. Corp. v. United States*,
    988 F.2d 1573 (Fed. Cir. 1993) ................................................ 15

**ADMINISTRATIVE DECISIONS**

*Phosphate Fertilizers from the Kingdom of Morocco and the Russian Federation:
    Initiation of Countervailing Duty Investigations,*
    85 Fed. Reg. 44,505 (Dep't of Commerce July 23, 2020) ...................... 2

*Phosphate Fertilizers from Russ.*,
    85 Fed. Reg. 76,524 (Dep't of Commerce Nov. 23, 2020) ...................... 3

Non-Confidential Version

## <u>TABLE OF AUTHORITIES</u>

**ADMINISTRATIVE DECISIONS-**         **PAGE(S)**
   **(continued)**

*Phosphate Fertilizers from the Russian Federation:*
  *Final Affirmative Countervailing Duty Determination*,
   86 Fed. Reg. 9,479 (Dep't of Commerce Feb. 16, 2021) ............................................................3

*Phosphate Fertilizers From the Kingdom of Morocco and the Russian Federation:*
  *Countervailing Duty Orders*,
   86 Fed. Reg. 18,037 (Dep't of Commerce Apr. 7, 2021) ............................................................3

Non-Confidential Version

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JANE A. RESTANI, JUDGE

| | |
|---|---|
| THE MOSAIC COMPANY,<br><br>       Plaintiff,<br><br>   v.<br><br>PHOSAGRO PJSC, JSC APATIT,<br><br>       Consolidated Plaintiffs,<br><br>   and<br><br>INDUSTRIAL GROUP PHOSPHORITE LLC,<br><br>       Consolidated Plaintiffs and<br>       Consolidated Plaintiffs-Intervenor,<br><br>   v.<br><br>UNITED STATES,<br><br>       Defendant,<br><br>THE MOSAIC COMPANY,<br><br>       Consolidated Defendant-Intervenor,<br>   and<br><br>PHOSAGRO PJSC, JSC APATIT,<br>INDUSTRIAL GROUP PHOSPHORITE LLC,<br><br>       Defendant-Intervenors. | Consol. Court No. 21-00117<br>**NON-CONFIDENTIAL VERSION**<br><br>Business Proprietary Information<br>Deleted From Pages 8–12, 18 |

## DEFENDANT'S RESPONSE IN SUPPORT OF REMAND RESULTS

Defendant, the United States, respectfully submits this response to the comments

submitted by plaintiff and consolidated defendant-intervenor The Mosaic Company (Mosaic),

Non-Confidential Version

and consolidated plaintiffs and defendant-intervenors PhosAgro PJSC (PhosAgro) and Joint

Stock Company Apatit (JSC Apatit) concerning the U.S. Department of Commerce's

(Commerce) Final Results of Redetermination Pursuant to Court Remand (*Second Remand

Results*).  Final Results of Redetermination Pursuant to Ct. Remand (Oct. 11, 2023), ECF No.

128 (*Second Remand Results*); *see also The Mosaic Company v. United States*, Consol. Ct. No.

21-00117, Slip Op. 23-99, 647 F. Supp. 3d 13588 (CIT July 11, 2023) (*Second Remand Order*).

As discussed below, Commerce's *Second Remand Results* fully complies with the Court's

*Second Remand Order*, and neither Mosaic and JSC Apatit demonstrate that the redetermination

is unlawful or unsupported by substantial evidence.  Accordingly, the Court should sustain the

*Second Remand Results*.

## **BACKGROUND**

On June 26, 2020, Commerce received a countervailing duty petition concerning imports

of phosphate fertilizers from Russia.  *See* Petitioner's Letter, "Petitions for the Imposition of

Countervailing Duties:  Phosphate Fertilizers from Morocco and Russia," dated June 26, 2020

(C.R. 1-8) (P.R. 1-8).  On July 23, 2020, Commerce published the initiation of a countervailing

duty investigation on phosphate fertilizers from Russia.  *See Phosphate Fertilizers from the

Kingdom of Morocco and the Russian Federation:  Initiation of Countervailing Duty

Investigations,* 85 Fed. Reg. 44,505 (Dep't of Commerce July 23, 2020) (P.R. 49).  On August 4,

2020, Commerce selected Industrial Group Phosphorite LLC (Phosphorite) (part of EuroChem)

and Joint Stock Company Apatit (part of PhosAgro) as the mandatory respondents in the

investigation.  *See* Memorandum, "Countervailing Duty Investigation of Phosphate Fertilizers

from Russia:  Respondent Selection," dated August 4, 2020 (C.R. 23) (P.R. 55).

On November 30, 2020, Commerce published its preliminary determination.  *See Phosphate Fertilizers from Russ.*, 85 Fed. Reg. 76,524 (Dep't of Commerce Nov. 23, 2020) (prelim. determ. inv.) (PDM) (P.R. 308).  On February 8, 2021, Commerce published its *Final Determination*.  *See generally Phosphate Fertilizers from the Russian Federation:  Final Affirmative Countervailing Duty Determination*, 86 Fed. Reg. 9,479 (Dep't of Commerce Feb. 16, 2021 (*Final Determination*) (final det. inv.) (P.R. 418) and accompanying Issues and Decision Memorandum (IDM) (P.R. 405).  On April 7, 2021, Commerce published a countervailing duty order on phosphate fertilizers from Russia following its affirmative countervailing duty determination and an affirmative injury determination by the U.S. International Trade Commission.  *Phosphate Fertilizers From the Kingdom of Morocco and the Russian Federation:  Countervailing Duty Orders*, 86 Fed. Reg. 18,037 (Dep't of Commerce Apr. 7, 2021) (*Order*) (P.R. 425).  This litigation followed.

On September 2, 2022, this Court issued its *First Remand Order*, which partially sustained and partially remanded for further consideration Commerce's *Final Determination*. *See generally The Mosaic Company v. United States*, 589 F. Supp. 3d 1298, 1305 (Ct. Int'l Trade 2022) (*First Remand Order*).  In its *First Remand Order*, this Court directed Commerce to:  (1) provide the correct total sales figure for Industrial Group Phosphorite LLC (Phosphorite) and explain the calculation; (2) either remove the added value-added tax (VAT) and import duties from the natural gas benchmark price or offer further explanation for why, when tier one and tier two benchmark prices are rejected, it is reasonable to add additional VAT and import duties and why there is not double counting, particularly based on this record; and (3) either abandon its cut-off date methodology or explain why Commerce is unable to countervail recurring subsidies from mining licenses granted by the government of Russia prior to Russia's designation as a

**Non-Confidential Version**

market economy on April 1, 2002. *See Remand Order* at 33-34, 38 and 41. On December 16, 2022, Commerce filed its *First Remand Results* with the Court. Final Results of Redetermination Pursuant to Court Remand, ECF. No. 96, (Dec. 16, 2022), (*First Remand Results*).

On July 11, 2023, this Court issued its *Second Remand Order*. *See Second Remand Order*. Although the Court sustained certain aspects of Commerce's *First Remand Results*, the Court remanded three issues for further consideration or explanation. *See Second Remand Order* at 15-20. First, the Court held that Commerce did not address the entirety of the petitioner's objections regarding JSC Apatit's cost information, and that on remand Commerce must explain why reconciling to PhosAgro's financial statements instead of JSC Apatit's financial statements was sufficient, respond to the petitioner's objections, or seek further information from PhosAgro. *See Second Remand Order* at 16-17. Second, Commerce must explain why it found a cost submission by EuroChem to be supported, respond to the petitioner's specific objections regarding this submission, and consider allowing EuroChem to supplement the record with an English translation of certain documents. *Id*. at 17-18. Third and finally, the Court held that Commerce did not adequately support its decision to use Profit Before Tax in the benefit calculation for the Government of Russia's provision of mining rights, and therefore, Commerce must further explain why it selected Profit Before Tax in the benefit calculation for PhosAgro. *Id*. at 19-20.

Pursuant to the Court's *Second Remand Order*, Commerce issued supplemental questionnaires to PhosAgro and EuroChem. *See* Commerce's Letter, "Supplemental Questionnaire for PhosAgro PJSC," dated July 26, 2023 (PhosAgro 2nd Remand Supplemental

Questionnaire) (P.2R.R. 1)[1]; *see also* Commerce's Letter, "Supplemental Questionnaire," dated July 26, 2023 (EuroChem 2nd Remand Supplemental Questionnaire) (P.2R.R. 2).  In the supplemental questionnaire to PhosAgro, Commerce instructed JSC Apatit to reconcile its cost of goods sold for phosphate rock as reported in PhosAgro's first response to Commerce's request in the First Remand.  Second Remand Results at 5; *see see also* PhosAgro's Letter, "Response to Second Supplemental Questionnaire," dated August 9, 2023 at 4 (PhosAgro's 2nd Remand SQR) (C.2R.R. 3-4) (P.2R.R. 6); *see also* PhosAgro's Letter, "Response to Supplemental Questionnaire," dated October 25, 2022 (PhosAgro's 1st Remand SQR) (C.R.R 1-2) (P.R.R 9).

In the supplemental questionnaire to EuroChem, Commerce requested a fully translated version of Supplemental Exhibit 6 from EuroChem's 1st Remand SQR.  EuroChem and PhosAgro timely responded to these supplemental questionnaires on August 1 and 9, 2023, respectively.  *Second Remand Results* at 5; *See* EuroChem's Letter, "EuroChem Response to Supplemental Questionnaire," dated August 1, 2023 (EuroChem's 2nd Remand SQR) (C.2R.R. 1-2) (P.2R.R. 4); *see* EuroChem's Letter, "Response to Supplemental Questionnaire," dated October 25, 2022, at 1-3 and Supplemental Exhibit 6 (EuroChem's 1st Remand SQR) (C.R.R 3-4) (P.R.R 10); *see also* PhosAgro's 2nd Remand SQR.

On August 11 and 21, 2023, the petitioner submitted comments on EuroChem's and PhosAgro's respective supplemental questionnaire responses.  *See* "Petitioner's Deficiency Comments on Industrial Group Phosphorite LLC's Supplemental Questionnaire Responses,"

---

[1] On October 25, 2023, Commerce filed the administrative record corresponding to the second remand, ECF No. 130, and documents referenced herein use "P.2R.R." for public documents and public versions of confidential documents and "C.2R.R." for confidential documents. Conversely, documents referencing the administrative record in the first remand, which was filed with the Court on December 30, 2022, ECF No. 98, are referred to as "P.R.R." for public documents and public versions of confidential documents and "C.R.R." for confidential documents.

dated August 11, 2023 (C.2R.R. 5) (P.2R.R. 7); and "Petitioner's Comments on PhosAgro

PJSC's and JSC Apatit's Response to Second Supplemental Questionnaire," dated August 21,

2023 (Petitioner's Deficiency Comments on PhosAgro's 2nd Remand SQR) (C.2R.R. 8)

(P.2R.R. 9).  In response, EuroChem submitted rebuttal comments.  *See* EuroChem's Letter,

"EuroChem Rebuttal Comments to Petitioner's Deficiency Comments," dated August 21, 2023

(C.2R.R. 5) (P.2R.R. 7).

On September 19, 2023, Commerce released the Draft Results of Redetermination.  *See*

Draft Results of Redetermination Pursuant to Court Remand, *The Mosaic Company v. United*

*States*, Consol. Court No. 21-00117, Slip Op. 23-99 (CIT July 11, 2023), dated September 19,

2023 (*Second Draft Remand Results*) (C.2R.R. 9) (P2.R.R. 10).  On September 26, 2023, the

petitioner, EuroChem, and PhosAgro submitted timely comments on the Draft Results of

Redetermination.  *See* Petitioner's Letter, "Petitioner's Comments on Draft Results of

Redetermination Pursuant to Court Remand," dated September 26, 2023 (Petitioner's Second

Draft Remand Comments) (P.2R.R. 12); *see also* EuroChem's Letter, "EuroChem Comments on

Draft Remand Results," dated September 26, 2023 (EuroChem's Second Draft Remand

Comments) (P.2R.R. 11); and PhosAgro's Letter, "PhosAgro PJSC's Comments on Commerce's

Second Draft Results of Redetermination," dated September 26, 2023 (PhosAgro's Second Draft

Remand Comments) (P.2R.R. 13).

On October 11, 2023, Commerce filed its *Second Remand Results* with the Court in

which it (1) explained how JSC Apatit reconciled its phosphate rock cost information to its

financial statements in a submission filed after the First Remand Results; (2) explained how a

translated submission by EuroChem after the First Remand Results supported the cost

reconciliations that it previously provided; and (3) explained why the use of Profit Before Tax was appropriate.

**ARGUMENT**

**I.      Standard Of Review**

"The same standard of review applies to the review of a remand determination as to the review of the original determination." *Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d 1372, 1375 (Ct. Int'l Trade 2002).  Accordingly, the "court will sustain {Commerce's} determination upon remand if it complies with the court's remand order, is supported by substantial evidence on the record, and is otherwise in accordance with law." *Amanda Foods (Vietnam) Ltd. v. United States*, 774 F. Supp. 2d 1286, 1290 (Ct. Int'l Trade 2011).

**II.     Commerce Properly Relied On PhosAgro's And EuroChem's Cost Information To Calculate A Benefit For The Provision Of Mining Rights For Less Than Adequate Remuneration**

Consistent with the Court's *Second Remand Order*, Commerce has:  (1) explained how JSC Apatit reconciled its phosphate rock cost information to its financial statements in a submission filed after the *First Remand Results*; and (2) explained how a translated submission by EuroChem after the *First Remand Results* supported the cost reconciliations that it previously provided.  *Second Remand Results* at 5-16.  No party has challenged the *Second Remand Results* on this issue, and PhosAgro supports Commerce's explanation regarding this issue.  *See* Consolidated Plaintiffs Phosagro PJSC And JSC Apatit Comments on the U.S. Department of Commerce's Second Final Results of Redetermination Pursuant to Court Remand, ECF No. 133, at 13-15 (November 13, 2023) (PhosAgro 2nd Response to Remand Comments).  Therefore, the Court should sustain Commerce's *Second Remand* Results on this issue.  We explain below how Commerce acted consistently with the *Second Remand Order*.

A.   <u>**PhosAgro's Cost Reconciliation**</u>

Previously, Commerce determined that, per its request, PhosAgro reported its costs incurred to mine phosphate ore and process the ore into beneficiated phosphate rock during the period of investigation, and PhosAgro tied its cost information to its financial statements and provided supporting documentation.  *Second Remand Results* at 5-6; *see First Remand Results* at 22.  However, the Court held that Commerce did not adequately explain why the reconciliation of JSC Apatit's cost information to PhosAgro's financial statements was sufficient.  Specifically, Commerce needed to "explain why reconciling to PhosAgro's statements was sufficient and respond to {the petitioner's} objection or seek further information from the respondent."  *Second Remand Results* at 6; s*ee Second Remand Order* at 16; *see also* Commerce's Letter, "Supplemental Questionnaire," dated October 14, 2022 (PhosAgro Investigation Supplemental Questionnaire), at Attachment I (P.R.R. 2).

On remand, Commerce requested a reconciliation of JSC Apatit's cost of phosphate rock sold during the period of investigation to JSC Apatit's financial statements for the same period.  *See* PhosAgro's 2nd Remand SQR at 4.  In response, JSC Apatit provided this reconciliation, and it tied its total period of investigation cost of sales of [                                    ] from its accounting system to [                          ] its 2019 financial statements.  *Second Remand Results* at 6; *see* PhosAgro's 2nd Remand SQR at 3-4 and Exhibit REM-8.  In addition, JSC Apatit provided a breakdown of the individual items that compose its period of investigation cost of sales, including [                          ] for phosphate rock, which tied directly to the period of investigation costs for phosphate rock that JSC Apatit originally reported.  *Second Remand Results* at 6; *see* PhosAgro's 2nd Remand SQR at 3-4 and Exhibit REM-8; *see also* PhosAgro's 1st Remand SQR at 3-4 and Exhibit REM-3.  Finally, JSC Apatit provided records

from its accounting system to support this figure and other components of its period of investigation cost of sales. *Second Remand Results* at 6; *see* PhosAgro's 2nd Remand SQR at 3-4 and Exhibits REM-8 to REM-14. As a result, Commerce determined JSC Apatit adequately reconciled its reported production costs for phosphate rock to its financial statements and provided documentation to support this reconciliation. Commerce determined that there was no record evidence to doubt the reliability or veracity of JSC Apatit's reported costs incurred to mine and process phosphate ore into beneficiated phosphate rock, and JSC Apatit's reported cost data was reliable to use in the mining rights cost buildup for the Provision of Mining Rights for less-than adequate renumeration benefit calculation.

Following the PhosAgro supplemental response, the petitioner raised two issues with JSC Apatit's reporting in JSC Apatit's 2nd Remand SQR: (1) that JSC Apatit's explanations for certain reconciling items were inadequate; and (2) that there was a "minor discrepancy" in a worksheet in JSC Apatit's 2nd Remand SQR. *See Second Draft Remand Results* at 7-8; *Second Remand Results* at 5-8; *see also* Petitioner's Deficiency Comments on PhosAgro's 2nd Remand SQR at 2-4. First, the petitioner argued that JSC Apatit's explanations for certain reconciling items were inadequate, and in particular, that JSC Apatit "[

]." *See* Petitioner's Deficiency Comments on PhosAgro's 2nd Remand SQR at 2-3. However, Commerce determined that JSC Apatit's response satisfied Commerce's request that it reconcile its cost of goods sold (COGS) for phosphate rock as reported in PhosAgro's 1st Remand SQR to JSC Apatit's audited period of investigation financial statements. *Second Remand Results* at 7. Moreover, Commerce determined that the provided [                                        ] and further determined that an analysis of [

**Non-Confidential Version**

] JSC Apatit's audited financial statements were not previously raised by the petitioners, and therefore were beyond the parameters of the *Second Remand Order*. Second Remand Results at 7-8.

Second, the petitioner asserted that there was a "minor discrepancy" in a worksheet in JSC Apatit's 2nd Remand SQR. *See* Petitioner's Deficiency Comments on PhosAgro's 2nd Remand SQR at 3-4. However, Commerce addressed the petitioner's claim that [

].

Petitioner's Deficiency Comments on PhosAgro's 2nd Remand SQR at 3-4. After reviewing the information, Commerce confirmed that [

] of this worksheet is [                    ], and [

]. Second Remand Results at 8; *Second Draft Remand Results* at 8; *see* PhosAgro's 2nd Remand SQR at Exhibit REM-3(3). Thus, Commerce determined there was no discrepancy (minor or otherwise). *See generally Second Draft Remand Results*; *Second Remand Results*; *see also* Petitioner's Draft Remand Comments.

Therefore, Commerce determined that JSC Apatit adequately reconciled its reported production costs for phosphate rock to its period of investigation financial statements, and that JSC Apatit's reported cost data are reliable to use in the Provision of Mining Rights for less-than adequate renumeration benefit calculation. As stated above, no party challenges this finding, and the Court should therefore sustain Commerce's determination on this issue.

B.     **EuroChem's Cost Of Production Records**

Previously, the Court remanded to Commerce to explain why EuroChem's cost information related to phosphate production was reliable and respond to the petitioner's specific objections that: (1) some of the submitted spreadsheets were in Russian and untranslated, (2) specific products included as costs did not appear to be related to phosphate production, and (3) some of the calculations lacked an explained methodology. *See Second Remand Order* at 17.

On remand, Commerce requested the complete translated version of Supplemental Exhibit 6 of EuroChem's 1st Remand SQR, which EuroChem timely submitted. *See* EuroChem 2nd Remand Supplemental Questionnaire. After examining the information, Commerce determined that EuroChem's reported cost data were reliable for use in the cost buildup for the Provision of Mining Rights for less-than-adequate renumeration benefit calculation. *See Second Remand Results* at 9-14. Commerce also found no evidence that EuroChem included costs unrelated to the mining of phosphate ore and processing of phosphate rock in its reported costs. *Second Remand Results* at 14.

In addition, in its final remand, Commerce addressed the petitioner's comments concerning the alleged deficiency in EuroChem's reporting. *See Second Remand Results* at 15-16, 21-23; *see* Petitioner's Comments on EuroChem's 2nd Remand SQR. In particular, the petitioner alleged that "[


]." *See Second Remand Results* at 15; *Second Draft Remand Results* at 14-15; *see* EuroChem's 2nd Remand SQR at [          ] Microsoft Excel worksheet; *see also* EuroChem's 1st Remand SQR at 2. However, Commerce explained that "the [          ] Microsoft Excel

**Non-Confidential Version**

worksheet, which is [

] licenses, does not show any untranslated sections," and

there is no evidence that this worksheet conflicts with the translated [                    ].  *See*

*Second Remand Results* at 15; *Second Draft Remand Results* at 14-15; s*ee* EuroChem's 2nd

Remand SQR at [                                        ] Microsoft Excel

worksheets.

Further, the petitioner alleged in comments on the draft remand that "[



]."  *See Second Remand Results* at 15; *Second Draft Remand Results* at 14-15; *see*

Petitioner's Comments on EuroChem's 2nd Remand SQR at 3.  However, Commerce explained

that based on the translated records provided by EuroChem, [



].  *See Second Remand Results* at 15-16; Second Draft Remand Results 15-

16; Second Draft Remand Results at 14-16; s*ee* EuroChem's 2nd Remand SQR at [

] Microsoft Excel worksheets; *see also*

EuroChem's 1st Remand SQR at 2.  Commerce also did not receive any additional clarification

or claims from the petitioner alleging doubts regarding the veracity and reliability of

EuroChem's information.  Therefore, Commerce determined that there was no evidence that

EuroChem improperly included costs not related to phosphate ore mining and phosphate rock

production in its reported costs, EuroChem reconciled KGOK's reported costs, and the

information was reliable for use in the mining rights cost buildup for the Provision of Mining

Rights for less-than-adequate renumeration benefit calculation.

JSC Apatit confirms that Commerce's calculation is accurate and does not challenge any aspect of Commerce's final determination regarding this issue. *See* PhosAgro 2nd Response to Remand Comments at 13-15. Accordingly, Commerce's determination that both JSC Apatit and EuroChem reconciled their cost information is supported by substantial evidence and in accordance with law and should be sustained.

### III. Commerce's Properly Determined That Profit Before Tax Yielded A More Accurate Calculation

Commerce properly determined that using Profit Before Tax as the numerator in the profit ratio calculation yields a more accurate calculation of the benefit calculation methodology, whereas using Gross Profit would include costs unrelated to the mining of phosphate ore and production of phosphate rock in the profit ratio calculation. *See Second Remand Results* at 16-20. PhosAgro's arguments to the contrary are wrong because Profit Before Tax exclude expenses that relate to activities much broader than JSC Apatit's mining and beneficiation of phosphate ore and contain instances of double counting.

Pursuant to 19 C.F.R. § 351.511(a)(2)(iii), in situations where "there is no world market price available to purchasers in the country in question, {Commerce} will normally measure the adequacy of remuneration by assessing whether the government price is consistent with market principles." 19 C.F.R. § 351.511(a)(2)(iii). "If Commerce determines that the government price is not consistent with market principles it will look to construct an external benchmark" and "it is within Commerce's discretion to weigh the relevant factors." *Second Remand Order* at 7 (citing *Canadian Solar Inc. v. United States*, 537 F. Supp. 3d 1380, 1389 n.6, 1391 (Ct. Int'l Trade 2021) (*Canadian Solar*).

Moreover, "{t}he burden of creating an adequate record lies with interested parties and not with Commerce." *QVD Food Co., Ltd. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir.

2011); *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1337 (Fed. Cir. 2016);

*SolarWorld Ams., Inc. v. United States*, 910 F.3d 1216, 1226 (Fed. Cir. 2018); s*ee also Zenith*

*Elecs. Corp. v. United States*, 988 F.2d 1573, 1583 (Fed. Cir. 1993) ("The burden of production

{belongs} to the party in possession of the necessary information.").  Finally, Commerce "must

examine the relevant data and articulate a satisfactory explanation for its action including a

'rational connection between the facts found and the choice made.'"  *Motor Vehicle Mfrs. Ass'n*

*of U.S. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983) (quoting *Burlington Truck*

*Lines v. United States*, 371 U.S. 156, 168 (1962)).

Here, pursuant to the Court's remand order, Commerce reconsidered the use of

PhosAgro's Profit Before Tax versus Gross Profit for the profit ratio calculation and determined

that using Profit Before Tax as the numerator in the profit ratio calculation results in the most

accurate measurement of the value of the underlying good conveyed via the Government of

Russia's mining rights.  *See Second Remand Results* at 16- 20, 24-31; *Second Draft Remand*

*Results* at 16-20.  Commerce explained that "{the} benefit analysis focuses on the costs to mine

and process phosphate ore into beneficiated phosphate rock during the period of review from

deposits related to the mining licenses in question," and therefore, "using a more narrowly

focused profit figure that excludes expenses unrelated to mining and beneficiation activities is

more appropriate in this instance."  *Second Remand Results* at 18-19; *see also* PhosAgro's Letter,

"PhosAgro PJSC Initial Section III CVD Questionnaire Response," dated September 24, 2020 at

Exhibit CVD-6 (PhosAgro's IQR) (C.R. 45) (P.R. 115-16)*.*

Previously, PhosAgro argued that "using Profit Before Tax instead of Gross Profit

excludes selling and administrative expenses from the profit ratio."  Second Remand Order at 19;

PhosAgro's IQR at Exhibit CVD-6; PhosAgro 2nd Response to Remand Comments at 3.

Pursuant to the Court's *Second Remand Order*, Commerce determined that the record did not support a finding that all the expenses in PhosAgro's financial statement line items related to the mining of phosphate ore and/or production of phosphate rock. *Second Remand Results* at 19. Rather, there were instances where Commerce had no information about the composition and specific expenses within certain line items such as "Selling Expenses," "Administrative Expenses," and "Other Expenses." *Id*. In addition, Commerce determined that including the entire amounts of these broad income statement line items in the numerator of the profit ratio calculation also risked double counting. *See Second Draft Remand Results* at 19-20; Second *Remand Results* at 30-31. Thus, Commerce determined that using Gross Profit, which included these line items, would therefore distort the profit ratio calculation because costs unrelated to the mining of phosphate ore and production of phosphate rock would be included. *Id*. Therefore, Commerce's determination to continue to use Profit Before Tax in the profit ratio calculation is supported by substantial evidence and in accordance with law.

PhosAgro continues to argue that Commerce incorrectly used Profit Before Tax to calculate the profit ratio calculation, and instead should employ Gross Profit or include additional expenses in JSC Apatit's profit ratio. *See* PhosAgro 2nd Response to Remand Comments at 6-13. Specifically, PhosAgro argues that: (1) Commerce's omission of certain selling and administrative expenses, taxes other than income taxes, and other expenses results in an inaccurate cost of production, and therefore, an inaccurate comparison of the benchmark of phosphate rock; and (2) if Commerce continues to use Profit Before Tax then it should make certain adjustments to the cost of production amount for comparison to the export sales price benchmark. *Id*. However, in both instances PhosAgro is mistaken, and Commerce's explanation

**Non-Confidential Version**

and methodology is the most accurate measurement of the value of the underlying good conveyed via the Government of Russia's mining rights.

First, PhosAgro argues that Commerce should employ Gross Profit in JSC Apatit's profit ratio because:  (1) Gross Profit includes the additional financial items that businesses factor into their sales price (*e.g.*, selling expenses, administrative expenses, and other expenses); and (2) there are no instances of potential double-counting of expenses.  *See* PhosAgro 2nd Response to Remand Comments at 7-11.  However, PhosAgro attempts to obfuscate and disregard Commerce's primary objective here, which is to calculate the costs to mine and process phosphate ore into beneficiated phosphate rock during the period of investigation from deposits related to the mining licenses in question.  *See Second Remand Results* at 18-19.

In the *First Remand Results*, Commerce requested that both companies report all costs incurred to mine phosphate ore and process the ore into beneficiated phosphate rock during the period of investigation.  *See Second Remand Results* at 18; *see also First Remand Results* at 22.  However, the record does not demonstrate that the alleged expenses within PhosAgro's financial statement line items (*i.e.*, "Selling Expenses," "Administrative Expenses," and "Other Expenses") actually relate to the mining of phosphate ore and/or production of phosphate rock.  *See Second Remand Results* at 19; *see* PhosAgro's IQR at Exhibit CVD-6.  For example, Commerce found that "{t}he notes to PhosAgro's 2019 consolidated financial statements show that the "Other Expenses" category includes items such as "Social expenditures" and "Increase in provision for bad debt."  *See Second Remand Results* at 26; *see also* PhosAgro's IQR at Exhibit CVD-6 (PJSC PhosAgro Consolidated Financial Statements for 2019, p. 28).  Further, both the "Selling Expenses" and "Administrative Expenses" categories also include "Salaries and social contributions."  *See Second Remand Results* at 26; *see also* PhosAgro's IQR at Exhibit

**Non-Confidential Version**

CVD-6 (PJSC PhosAgro Consolidated Financial Statements for 2019, p. 27-28).  Therefore, Commerce determined that "using Gross Profit would result in the inclusion of these 'social expenditures,' salaries and social contributions for sales and administrative personnel, and bad debt provisions in the numerator of the profit ratio calculation" and would be inconsistent with Commerce's primary objective (*i.e.*, calculating a profit ratio based on PhosAgro's costs for phosphate ore mining and beneficiation).  *See Second Remand Results* at 26.

Additionally, PhosAgro's claim that there are no instances of double counting is inaccurate.  *See* PhosAgro 2nd Response to Remand Comments at 10.  Rather, Commerce explained that using Gross Profit in the profit ratio calculation would double count certain extraction taxes in PhosAgro's phosphate rock cost build-up.  *See id*. at 26-27.  PhosAgro's 2019 Consolidated P&L Statement demonstrates that the respondent deducted "Taxes, Other Than Income Tax" from Gross Profit to calculate Profit Before Tax, and the notes from the consolidated financial statements further state that the Taxes, Other Than Income Tax" category includes a "Mineral extraction tax" of 954 million RUB.  *Id*. at 27; PhosAgro's IQR at Exhibit CVD-6 (PJSC PhosAgro Consolidated Financial Statements for 2019, p. 28).  Accordingly, in the *First Remand Results*, Commerce accounted for those 2019 extraction taxes that PhosAgro paid to the Government of Russia in the cost buildup for PhosAgro.  *See* Memorandum, "Draft Remand Redetermination Calculations for PhosAgro PJSC," dated November 18, 2022, at 2 (P.R.R. 14-15) (C.R.R. 7-8)., unchanged in Memorandum, "Final Remand Redetermination Calculations for PhosAgro PJSC," dated December 16, 2022, at 1-2 and Attachment 2 (P.R.R. 25-26) (C.R.R. 16-17).  Thus, if Commerce were to use Gross Profit in the profit ratio calculation, then these extraction taxes in PhosAgro's phosphate rock cost buildup would be counted again.

**Non-Confidential Version**

Additionally, Commerce explained that the notes from PhosAgro's 2019 consolidated financial statements demonstrate that there would be additional instances of double counting expenses in PhosAgro's phosphate rock cost buildup if Gross Profit was used in the profit ratio calculation. *Second Remand Results* at 27-28. Specifically, PhosAgro's 2019 Consolidated P&L Statement shows the company deducted "Selling Expenses" from Gross Profit to calculate Profit Before Tax, and the notes further clarify that the "Selling Expenses" category includes expense categories such as "{f}reight, port and stevedoring expenses," "Russian Railways infrastructure tariff and operators' fees," and "{m}aterials and services." *Second Remand Results* at 28; *see also* PhosAgro's IQR at Exhibit CVD-6 (PJSC PhosAgro Consolidated Financial Statements for 2019, p. 28). Similar [

] for phosphate roc also appear in PhosAgro's phosphate rock cost data in PhosAgro's 2nd Remand SQR. *See Second Remand Results* at 28; PhosAgro's 2nd Remand SQR at 2 and Exhibit REM-8. Relatedly, PhosAgro deducted "Administrative Expenses" from Gross Profit to calculate Profit Before Tax, and PhosAgro's cost data in PhosAgro's 2nd Remand SQR already shows [

] for phosphate rock. *See Second Remand Results* at 28; s*ee also* PhosAgro's IQR at Exhibit CVD-6 (PJSC PhosAgro Consolidated Financial Statements for 2019, p. 7); PhosAgro's 2nd Remand SQR at 2 and Exhibit REM-8. Thus, certain related expenses have already been included to calculate PhosAgro's cost buildup for phosphate rock and were incorporated into Profit Before Tax. Therefore, by relying on Profit Before Tax as the numerator, Commerce can exclude expenses that relate to activities much broader than JSC Apatit's mining and beneficiation of phosphate

ore, eliminate instances of double counting in PhosAgro's cost buildup for phosphate rock, and remove the risk of other instances of double counting that are evident based on PhosAgro's consolidated financial statements.  *See Second Remand Results* at 28.

Second, PhosAgro argues that if Commerce continues to utilize Profit Before Tax instead of Gross Profit in its calculations, then it should make certain adjustments to the cost of production amount for comparison to the export sales price benchmark.  *See* PhosAgro 2nd Response to Remand Comments at 11-13.  In particular, PhosAgro contends that "Commerce should additionally use expense ratio multipliers for the required additional expenses (*e.g.,* "Administrative Expenses" and "Selling Expenses") in deriving the company's adjusted cost of production amount" because "{t}he inclusion of the additional expenses are{sic} necessary in order to ensure a reasonable comparison of the alleged benefit provided to JSC Apatit with Commerce's constructed benchmark."  *Id*. at 11-12.  Thus, PhosAgro asserts that Commerce must consider all of their expenses incurred, including "Administrative Expenses" and "Selling Expenses."  *See id*. at 12-13.

However, PhosAgro is mistaken, and PhosAgro does not provide any evidence demonstrating that a certain portion of the "Selling Expenses," "Administrative Expenses," or "Other Expenses" in its 2019 consolidated financial statements relate to its mining and beneficiation of phosphate ore nor does it provide a legal basis to challenge Commerce's methodology.  *See Second Remand Results* at 28; *see also* PhosAgro's IQR at Exhibit CVD-6; 19 C.F.R. § 351.511(a)(2)(iii).  Thus, including these items in the Profit Before Tax would compromise the profit ratio calculation and incorporate expenses unrelated to mining and beneficiation activities.  *See Second Remand Results* at 31.

**Non-Confidential Version**

We also note that the petitioner supports Commerce's findings with respect to the use of Profit Before Tax and Commerce's decision not to adjust for any additional expenses. *See* The Mosaic Company's Comments on Commerce's Remand Redetermination, ECF No. 132, 1-5 (November 13, 2023).

Given the foregoing and the explanation contained in Commerce' *Second Remand Results*, Commerce's determinations not to adjust the profit ratio to include additional expenses and to continue to rely on Profit Before Tax as the numerator are supported by substantial evidence on the record and should be sustained.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court sustain Commerce's second remand redetermination and enter judgment in favor of the United States.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General</td></tr>
<tr><td></td><td>PATRICIA M. McCARTHY<br>Director</td></tr>
<tr><td></td><td>/s/ L. Misha Preheim<br>L. MISHA PREHEIM<br>Assistant Director</td></tr>
<tr><td>OF COUNSEL:<br>Jared M. Cynamon<br>Attorney<br>U.S. Department of Commerce<br>Office of the Chief Counsel<br>  for Trade Enforcement and Compliance<br>Washington, D.C.</td><td>/s/ Ebonie I. Branch<br>EBONIE I. BRANCH<br>Trial Attorney<br>U.S. Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, D.C. 20044<br>Telephone: (202) 353-7578<br>Ebonie.I.Branch@usdoj.gov</td></tr>
</table>

**Non-Confidential Version**

December 13, 2023                                     Attorneys for Defendant

**Non-Confidential Version**

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief complies with the word-count limitations in that it contains 6,087 words according to the word-count function of the word-processing software used to prepare the brief, including text, footnotes, and headings.

<u>/s/ Ebonie I. Branch</u>
EBONIE I. BRANCH

**Non-Confidential Version**

## <u>CERTIFICATE OF SERVICE</u>

I certify under penalty of perjury that on this 13th day of December 2023, a copy of the

foregoing "DEFENDANT'S RESPONSE IN SUPPORT OF REMAND RESULTS" was filed

electronically.  I understand that notice of this filing will be sent to all parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's system.

<u>/s/ Ebonie I. Branch</u>
EBONIE I. BRANCH